Field, *et al.*, *vs.* Adreon, *et al.*, Garn. of Kennedy.

---

## John A. Field and others, *vs.* William Adreon and others, Garnishees of James Kennedy.

A party may abscond, and subject himself to the operation of the attachment laws against *absconding debtors*, without leaving the limits of the State.

An unnaturalized foreigner, residing and doing business in this State, is, for commercial objects, in contemplation of our attachment laws, *a citizen of this State*, and liable to be proceeded against as an absconding debtor.

Field, *et al.*, *vs.* Adreon, *et al.*, Garn. of Kennedy.

A party may be a citizen, for commercial or business purposes, and not for political purposes.

APPEAL from the Court of Common Pleas for Baltimore city.

This was an *attachment* on warrant procured by the appellants, and issued on the 17th of November 1851, out of the Superior Court for Baltimore city, against James Kennedy, as an absconding debtor; and on the same day laid in the hands of the appellees, as garnishees, who appeared and plead "*non assumpsit*" for Kennedy and "*nulla bona*" for themselves. The affidavit of the plaintiffs to their account before the magistrate states, that Kennedy "was a citizen of the State of Maryland at the time" the debt due them was contracted, and "that they are credibly informed, and verily believe, that the said James Kennedy is actually runaway and fled from justice, and removed from his place of abode with intent to injure and defraud his creditors."

*Exception.* At the trial the plaintiffs proved their claim, the absconding of Kennedy, funds belonging to him in the hands of garnishees, and that he had resided in the city of Baltimore for twelve months previous to his absconding, and for that period kept a dry goods store in said city. The garnishees then proved by a competent witness, that about nineteen years ago, witness knew Kennedy in Ireland, when he was seven or eight years old; that he next saw him in Baltimore, in 1850; that his parents were Irish and lived in Ireland. They then asked two instructions to the jury:

1st. If they believe that Kennedy was born in Ireland, of Irish parents, and did not come to America until 1850, being then twenty four or twenty-five years of age, then he was not a citizen of the State of Maryland within the meaning of the attachment laws of this State: there being no proof of his having made any declaration of his intention to become a citizen of the United States, or of his having been naturalized.

2nd. If they believe that Kennedy was only a resident alien, and not at any time a citizen of this State, then the plaintiffs are not entitled to recover.

The court (MARSHALL, J.,) granted these instructions, and

to this ruling the plaintiffs excepted, and the verdict being in favor of the garnishees, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*George W. Dobbin* for the appellants.

The evidence shows that Kennedy was a trader or merchant, resident and domiciled in Maryland; and the question is, whether he is a citizen of Maryland within the meaning of the attachment laws of 1795, ch. 56, and 1839, ch. 39, sec. 2? The former act uses the word *"citizen,"* and the question is, does it mean only that class of persons who have *all* the rights of *citizenship,* or does it include those also who have a *commercial domicil* but have not the *political* rights of citizens? We say the latter. There is a clearly recognized distinction between citizenship for *commercial* purposes and citizenship for *political* purposes. The former may exist without the latter. *Story's Confl. of Laws, sec.* 48. 1 *Kent's Com.,* 74 to 76, 8 *Term Rep.,* 31, *Wilson vs. Marryat.* 1 *Maule & Selw.,* 726, *Bell vs. Reid.* 3 *Bos. & Pul.,* 113, *McConnell vs. Hector.* 1 *Do.,* 430, *Marryat vs. Wilson.* 3 *Rob. Adm. Rep.,* 12, *The Indian Chief.* 4 *Do.,* 255, *The Flanous,* cited at the foot of the case of the *Nayade.* 2 *Cranch,* 120, *The Charming Betsy.* 7 *Do.,* 506, *Livingston vs. Md. Ins. Co.* 8 *Do.,* 278, *The Venus.* 1 *Paine's C. C. Rep.,* 609, *Catlett vs. Pacific Ins. Co.* 5 *Mason,* 70, *Case vs. Clarke.* 3 *Wash. C. C. Rep.,* 553, *Cooper vs. Galbraith.*

The attachment laws must be construed together as a system, *(Dwarris on Statutes,* 699.) The act of 1715, ch. 40, makes no reference to *citizenship;* it says *"inhabitants,"* and applies to all parties. The act of 1795, ch. 56, is a *supplement* to the former, and says, that *"* any person, not being a *citizen* of this State, and not *residing* therein," who shall abscond, &c. The act of 1825, ch. 114, uses the terms, "inhabitant or resident," and so does the act of 1834, ch. 79. These acts show that the words citizen, inhabitant and resident, were used by the legislature as synonymous.

Field, et al., vs. Adreon, et al., Garn. of Kennedy.

*Edward O. Hinkley* for the appellees, argued:

1st. That the attachment laws must be construed strictly. Such have been the repeated decisions of our own courts. 1 *H. & McH.*, 504, *Thompson vs. Towson.* 5 *H. & J.*, 130, *Shivers vs. Wilson.* 6 *Do.*, 446, *Yerby vs. Lackland. Ibid.*, 497, *Mandeville vs. Jarrett.* 6 *G. & J.*, 335, *Wever vs. Baltzell.* 10 *Do.*, 274, *Baldwin vs. Neale. Ibid.*, 383, *Stone vs. Magruder.*

2nd. The terms, resident, citizen and inhabitant, are not synonymous or convertible. In this country the word *citizen* has reference to the rights of the elective franchise; inhabitant means a permanent resident; and resident one who resides in a place for an indefinite time. These terms must not be confounded; the decisions of our own courts upon our own local and peculiar laws have settled this point, and it cannot now be questioned.

3rd. The acts relating to attachments give no right of attachment against a *resident* absconding, but only against a citizen absconding, or against a *non-resident*. All the previous acts relate to *citizens*, and the legislature knowing this when they passed the new attachment law of 1854, ch. 153, changed the phraseology and used the word "*person*." This is a legislative construction of the previous acts.

4th. If there be any right of attachment as against a *resident absconding*, it is only to be exercised against him as a *non-resident* for the reason, that *eo instanti* a resident who is not a citizen absconds, he becomes a non-resident. But whether there be or not any right of attachment in such a case, it is clear, that in *this case* the attachment cannot be sustained upon the oath of the plaintiffs that the defendant is a citizen, when, in fact, he is not a citizen, for what the plaintiff avers in the oath he must *prove*. 1 *Gill*, 372, *Boarman vs. Israel.* 3 *Do.*, 313, *Barr vs. Perry. Ibid.*, 485, *Dickinson vs. Barnes.*

MASON, J., delivered the opinion of this court.

In the present instance the affidavit being in due form, and according to the requirements of the acts of Assembly, makes a

*prima facie* case in favor of the plaintiffs, and entitles them to their attachment against the defendant, as an absconding debtor. The garnishees in this action seek to rebut the *prima facie* case thus made, by showing, that at the time the defendant absconded he was not a *citizen* of this State; and it is ingeniously argued, that if the case is embraced at all within the operation of the attachment law, it must fall under that branch which provides a remedy against *non-resident debtors,* and not under that which relates to *absconding citizens,* for in the act of *absconding,* the debtor, not having been a citizen, became a *non-resident.* This view of the subject might be unanswerable, if the attachment laws contemplated that a debtor should *leave the State* before he could be said to have *absconded.* But this argument is a *non sequitur.* A party may abscond, and subject himself to the operation of the attachment laws against *absconding debtors,* and still not depart from the limits of the State. In such a case the party could not be said to be a non-resident of the State, and therefore could not be proceeded against by attachment as such. Unless, under such circumstances, he could be treated as an *absconding citizen,* his case would not be covered by the attachment laws at all.

Kennedy, the defendant in this case, it appears, was an unnaturalized Irishman, *residing and doing business in Baltimore* at the time he absconded, and the question for us to determine is, whether those circumstances are sufficient to constitute him a *citizen* in contemplation of our attachment laws, inasmuch as we have shown that he could not be proceeded against as a *non-resident* debtor?

It certainly never could have been the intention of our legislature to have made such an invidious distinction in favor of *foreign citizens* residing in our State, over our own resident citizens, as to exempt the former from being proceeded against as absconding debtors, while the latter were to be held subject to all the penalties of the attachment laws against debtors absconding to evade their creditors.

We are of the opinion, that as the debtor was residing and doing business in Baltimore, he was, in contemplation of our attachment laws, *a citizen of this State,* and as such, having

actually runaway to avoid his creditors, was liable to be proceeded against as an absconding debtor.

We do not wish to be understood as deciding, that the debtor in this case was a citizen for every purpose and in every sense. A party may not be a citizen for political purposes, and yet be a citizen for commercial or business purposes. In the present instance we simply determine, that Kennedy, for commercial objects, was a *citizen* of this State in contemplation of our attachment system.

For the reasons expressed, the judgment of the court below was erroneous and must be reversed. *Story's Confl. Laws,* sec. 48. 1 *Kent,* 74, 75, 76. *Wilson vs. Marryat,* 8 *Term,* 31, 36. *McConnell vs. Hector,* 3 *B. & P.,* 113. 3 *Wash. C. C. Rep.,* 553, *Cooper vs. Galbraith.*

*Judgment reversed, and judgment for appellant.*