### CITY OF MINNEAPOLIS v. REUM.

(Circuit Court of Appeals, Eighth Circuit. May 29, 1893.)

No. 211.

1. ALIENS—WHO ARE—EFFECT OF STATE LAWS.

A foreign-born resident of the United States, who has merely declared his intention to become a citizen, but has never complied with any other provision of the naturalization laws, is none the less an alien because of the fact that the constitution and laws of Minnesota, wherein he resides, have conferred the elective franchise and other privileges of citizenship on foreign subjects who have declared their intention to be naturalized, and that he has actually voted for member of congress and state and county officers.

2. SAME—NATURALIZATION LAWS.

Nor is his status altered by reason of the fact that, when he so declared his intention, he was entitled, by reason of length of residence, to be naturalized, under Rev. St. § 2167, for that section merely dispenses with the two-year delay between the declaration of intention and the actual admission to citizenship which is prescribed by section 2165.

In Error to the Circuit Court of the United States for the District of Minnesota.   Affirmed.

Statement by SANBORN, Circuit Judge:

On October 7, 1891, Frederick Reum, the defendant in error, brought this action against the city of Minneapolis, the plaintiff in error, for a personal injury that resulted from its negligence. He recovered judgment, to reverse which this writ of error was sued out. In his complaint he alleged that he was an alien, and a subject of the king of Saxony, and this allegation was denied by the defendant. The evidence disclosed these facts: The plaintiff was born in the kingdom of Saxony in 1859. His father and mother were natives of that kingdom, and the former resided there until he died, in the infancy of the plaintiff. In 1863, after his father's death, the plaintiff and his mother came to the state of Minnesota, where they have since resided. In 1885 he was married, and has since that time owned and occupied a farm in that state. On October 25, 1890, he made a declaration of his intention to become a citizen of the United States in the circuit court for the district of Minnesota; but he has never been admitted, or applied to be admitted, to citizenship under the second and third paragraphs of section 2165 of the Revised Statutes of the United States, or under any provisions of the acts of congress. The state of Minnesota has conferred upon all foreign subjects resident within its borders who have declared their intention to become citizens the elective franchise, the privilege of holding any office within its gift, and practically all of the privileges of citizenship in the power of that state to confer. In November, 1890, the plaintiff voted for a member of congress and for state and county officers in Minnesota. At the close of the evidence the defendant moved the court to dismiss the action for want of jurisdiction, on the ground that the evidence failed to establish the allegation that the plaintiff was an alien. The court denied the motion, and this ruling is the supposed error assigned.

David F. Simpson, (Robert D. Russell, on the brief,) for plaintiff in error.

John W. Arctander, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, (after stating the facts as above.)   In Lanz v. Randall, 4 Dill. 425, Mr. Justice Miller, who was then pre-

siding in the circuit court for the district of Minnesota, held that a state could not make the subject of a foreign government a citizen of the United States, and that a resident of Minnesota who was born a subject of the grand duke of Mecklenburg, had declared his intention to become a citizen of the United States many years before he brought his suit, had resided in the state of Minnesota for 15 years, had several times voted at elections held in that state where the constitution of the state authorizes such residents to do so without naturalization, but had never applied to be or been admitted to citizenship under the federal naturalization laws, was still an alien, and a subject of the grand duke of Mecklenburg. This decision has been followed by the courts, and acquiesced in by the profession. It is now vigorously challenged by counsel for plaintiff in error.

Section 2, art. 3, of the constitution of the United States, provides that the judicial power of the nation shall extend to "controversies between a state or the citizens thereof and foreign states, citizens, or subjects;" and the acts of congress of March 3, 1887, (24 Stat. 552,) and of August 13, 1888, (25 Stat. 433,) confer jurisdiction of all these controversies in cases involving over $2,000 upon the circuit courts. Every person at his birth is presumptively a citizen or subject of the state of his nativity, and where, as in the case at bar, his parents were then both subjects of that state, the presumption is conclusive. To the land of his birth he owes support and allegiance, and from it he is entitled to the civil and political rights and privileges of a citizen or subject. This relation, imposed by birth, is presumed to continue until a change of nationality is proved. Minor v. Happersett, 21 Wall. 162, 167; Vatt. Law Nat. p. 101; Morse, Nat. 61, 125. A change of nationality cannot be made by the individual at will. Each nation has the right to refuse to grant the rights and privileges of citizenship to all persons not born upon its soil, and, if it determines to admit them to those rights and privileges, it may fix the terms on which they shall be conferred upon them. Naturalization is the admission of a foreign subject or citizen into the political body of a nation, and the bestowal upon him of the quality of a citizen or subject.

The fourteenth amendment to the constitution of the United States provides that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." As the plaintiff was born in the kingdom of Saxony, of parents who at the time of his birth were subjects of the king of Saxony, he is not a citizen of the United States unless he has been naturalized therein. The United States, in the exercise of their undoubted right, have prescribed the conditions upon compliance with which an alien may become a citizen of this nation. The act of congress of April 14, 1802, (2 Stat. 153, c. 28, § 1; Rev. St. § 2165,) provides that "an alien may be admitted to become a citizen of the United States in the following manner, and not otherwise. First. He shall, two years at least prior to his admission, declare before a proper court his intention to become a citizen of the United States, and to re-

nounce his allegiance to the potentate or sovereignty of which he may be at the time a citizen or subject. Second. He shall, at the time of his application to be admitted, declare, on oath, before some one of the courts above specified, that he will support the constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty; and particularly, by name, to the prince, potentate, state, or sovereignty of which he was before a citizen or subject, which proceedings shall be recorded by the clerk of the court. Third. It shall be made to appear to the satisfaction of the court admitting such alien that he has resided within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of a good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; but the oath of the applicant shall in no case be allowed to prove his residence."

By the act of May 26, 1824, (4 Stat. 69, c. 186, § 1; Rev. St. § 2167,) it is provided that:

"Any alien, being under the age of twenty-one years, who has resided in the United States three years next preceding his arriving at that age, and who has continued to reside therein to the time he may make application to be admitted a citizen thereof, may, after he arrives at the age of twenty-one years, and after he has resided five years within the United States, including the three years of his minority, be admitted a citizen of the United States, without having made the declaration required in the first condition of section twenty-one hundred and sixty-five; but such alien shall make the declaration required therein at the time of his admission, and shall further declare on oath, and prove to the satisfaction of the court, that, for two years next preceding, it has been his bona fide intention to become a citizen of the United States; and he shall in all other respects comply with the laws in regard to naturalization."

There is no other provision of the acts of congress under which this plaintiff could have been naturalized. The counsel for plaintiff in error, however, alleges that he became a citizen of the United States (1) because at the time he declared his intention to do so he might have been admitted to citizenship, under the provisions of section 2167; (2) because various acts of congress have conferred certain privileges, and some have conferred all the privileges, of a citizen upon foreign-born residents who had declared their intention to become citizens; and (3) because the state of Minnesota has granted to such residents practically all the privileges of citizenship in its power to bestow.

Before this plaintiff could become a naturalized citizen, the contract of allegiance and protection that the relation of a citizen to his nation implies must be made between him and the United States. The United States have prescribed the conditions under which such an alien may make this contract, the place where, and the manner in which, it shall be made, and have declared that it can be made on those conditions, and in that manner, and not otherwise. Rev. St. § 2165. The conditions are that he shall declare, on oath, that he will support the constitution; that he

does renounce all allegiance to every foreign prince, potentate, state, or sovereignty, and particularly to that one of which he was a subject; that it shall be made to appear to the court that he has resided in the United States five years, and in the state where the court is held one year; that he has behaved as a man of good moral character during all of this time, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same. The place where these conditions must be complied with is in one of the courts of record named in the acts of congress, and the method by which the contract is to be made is by plenary proof to that court of a compliance with these conditions, which must be evidenced by its judgment. The plaintiff has complied with none of these terms. He has not even applied to any court to be admitted to citizenship. He has not consented to become a citizen of the United States on the terms they offer to him, or on any terms, but he still insists he is not a citizen, and that he is still a subject of the king of Saxony. On the other hand, the United States have not consented to accept the plaintiff as a citizen, on any terms, much less to waive all the essential conditions without a compliance with which congress has declared an alien cannot be naturalized. The minds of both parties must meet to make a contract, and, where neither party consents, there can surely be no agreement.

That the plaintiff, on October 25, 1890, had resided in Minnesota, as boy and man, long enough to qualify him to become a citizen under section 2167, is not material. The conclusive answer to the argument here urged is that the declaration of an intention to enter into a new relation for which parties are qualified does not establish the relation. A man and woman who declare their intention to be married at some future time do not thereby become husband and wife. On the other hand, a declaration of an intention to enter into a relation or to do an act at some future time is very persuasive evidence that the relation was not entered upon, and the act was not done, at the time the declaration was made. It must be borne in mind that the only effect of section 2167 was to relieve the plaintiff from waiting two years after filing his declaration before being admitted to citizenship. That section expressly provides that in all other respects he shall comply with the laws in regard to naturalization. The plaintiff's declaration on October 25, 1890, when he was qualified to be naturalized, that he intended at some future time to become a citizen, coupled with the fact that he did not then apply to be admitted to citizenship, nor comply with any of the conditions prescribed by law for his naturalization, compels the conclusion that he did not then denationalize himself, but that he still remained a foreign subject.

That congress, in various acts, has conferred certain privileges and imposed certain burdens upon "persons of foreign birth who shall have declared their intention to become citizens," at the same time that it conferred like privileges or imposed like burdens upon our own citizens, as in the act of March 3, 1863, (12 Stat. 731,) where all able-bodied male citizens of the United States, and "persons

of foreign birth who shall have declared their intention to become citizens under and in pursuance of the laws thereof," between certain ages, are declared to constitute the national forces, and as in the patent laws, (Rev. St. § 4904,) the pre-emption laws, (Id. § 2259,) and in the mining laws, (Id. § 2289,) where certain privileges are conferred on citizens of the United States, and "those who have declared their intention to become such," in no way militates against, but strongly supports, the correctness of our conclusion, because, if foreign-born residents, by declaring their intention to become citizens, could ipso facto become such, it would have been futile to name them in all of these acts as a class distinct from our citizens.   That congress has, by various special acts, many of which are referred to in the opinion of Chief Justice Fuller in Boyd v. Nebraska, 143 U. S. 158, 12 Sup. Ct. Rep. 375, naturalized certain classes of persons who had not complied with the terms of the general laws on this subject, is not important here, because the plaintiff is not a member of any class thus naturalized.   Nor is the decision in Boyd v. Nebraska, supra, in point in this case because Gov. Boyd was there held to be one of a class of foreign-born residents that was naturalized by the acts of congress admitting the state of Nebraska into the Union.   These acts conferred the rights of citizenship upon foreign-born residents of Nebraska who had declared their intention to become citizens.   The plaintiff was a resident of Minnesota.

A single argument remains to be noticed, and that is that the state of Minnesota has conferred on plaintiff the elective franchise, the right to hold any office in its gift, and, in reality, all the rights and privileges of citizenship in its power to bestow; and therefore it is said he is a citizen of that state, and not a foreign subject, and the federal court has no jurisdiction of this action. It may be conceded that a state may confer on foreign citizens or subjects all the rights and privileges it has the power to bestow, but, when it has done all this, it has not naturalized them. They are foreign citizens or subjects still, within the meaning of the constitution and laws of the United States, and the jurisdiction of the federal courts over controversies between them and citizens of the states is neither enlarged nor restricted by the acts of the state.   The power to naturalize foreign subjects or citizens was one of the powers expressly granted by the states to the national government.   By section 8, art. 1, of the constitution of the United States, it was provided that "the congress shall have the power to establish a uniform rule of naturalization."   Congress has exercised this power, established the rule, and expressly declared that foreign-born residents may be naturalized by a compliance with it, and not otherwise.   This power, like the power to regulate commerce among the states, was carved out of the general sovereign power held by the states when this nation was formed and granted by the constitution to the congress of the United States.   It thus vested exclusively in congress, and no power remained in the states to change or vary the rule of naturalization congress established, or to authorize any foreign subject to dena-

tionalize himself, and become a citizen of the United States, without a compliance with the conditions congress had prescribed. Dred Scott v. Sandford, 19 How. 393, 405; Slaughter House Cases, 16 Wall. 36, 73; Minor v. Happersett, 21 How. 162; Boyd v. Nebraska, 143 U. S. 135, 160, 12 Sup. Ct. Rep. 375.

In like manner, the states granted to the judiciary of the nation the power to determine a controversy between a state or citizens thereof and foreign states, citizens, or subjects, (Const. U. S. art. 3, § 2,) and congress conferred that power upon the circuit courts. The extent of the jurisdiction of those courts is measured by the constitution and the acts of congress. A foreign-born resident, who has not been naturalized according to the acts of congress, is not a "citizen" of the United States or of a state, within the definition given by the fourteenth amendment to the constitution, but remains a foreign subject or citizen; and any controversy between him and a citizen of a state which involves a sufficient amount is thus clearly within the jurisdiction of the circuit courts, under any fair construction of the constitution and laws of the United States. The jurisdiction thus conferred it is not in the power of any state, by its legislative or other action, to take away, restrict, or enlarge, and the action of the state of Minnesota regarding the citizenship of the plaintiff was not material in this case. Toland v. Sprague, 12 Pet. 300, 328; Cowless v. Mercer Co., 7 Wall. 118; Railway Co. v. Whitton, 13 Wall. 270, 286; Phelps v. Oaks, 117 U. S. 236, 239; 6 Sup. Ct. Rep. 714; O'Connell v. Reed, 56 Fed. Rep. 531.

The result is that the power granted to congress by article 1, § 8, of the constitution of the United States, to establish a uniform rule of naturalization, is exclusive; and the naturalization laws enacted by congress in the exercise of this power constitute the only rule by which a foreign subject may become a citizen of the United States or of a state, within the meaning of the federal constitution and laws. It is not in the power of a state to denationalize a foreign subject who has not complied with the federal naturalization laws, and constitute him a citizen of the United States or of a state, so as to deprive the federal courts of jurisdiction over a controversy between him and a citizen of a state, conferred upon them by article 3, § 2, of the constitution of the United States, and the acts of congress.

A foreign subject who is qualified to become a citizen of the United States, under section 2167 of the Revised Statutes, does not become such by filing his declaration of intention so to do. That section requires that he shall renounce allegiance to the sovereignty of which he is a subject, take the oath of allegiance to the United States, and comply with the other conditions prescribed in the second and third paragraphs of section 2165 of the Revised Statutes, in order to become naturalized; and until he does so he remains a foreign subject.

The court below was right in denying the motion to dismiss this action for want of jurisdiction, and the judgment below is affirmed, with costs.