## BAHUAUD et al. v. BIZE et al.

(Circuit Court, D. Nebraska. January 14, 1901.)

1. CITIZENSHIP—TREATIES — CONSTITUTIONAL LAW — DISABILITY OF ALIENS—
RIGHT TO INHERIT—NATURALIZATION—RESIDENTS OF TERRITORY.
Residents and inhabitants of the territory of Nebraska at the time of
its admission as a state to the Union, who had previous thereto declared
before a court of record their intention to become citizens of the United
States, were by the enabling act created naturalized citizens of the United
States.

2. TREATIES—EFFECT.
By article 6 of the constitution of the United States, all treaties with
foreign countries are the supreme law of the land, binding upon the sev-
eral states.

3. SAME—ALIENS—INHERITING REAL ESTATE.
It is within the power of the United States by treaty to remove the
disability of aliens to inherit real estate within the several states.

4. SAME.
By the terms of the treaty between the United States and France en-
tered into in 1853, citizens and subjects of France are entitled to acquire
by inheritance and otherwise real estate in all respects the same as a
citizen of the United States in those states by whose laws an alien is
permitted to hold real estate.

5. SAME—CONSTITUTIONAL LAW.
As the constitution and statutes of Nebraska permit resident aliens to
hold and acquire real estate in the same manner as citizens, *held*, that
the provisions of the statute prohibiting nonresident aliens from acquir-
ing real estate by inheritance or otherwise is inoperative so far as it re-
lates to citizens or subjects of France.

(Syllabus by the Court.)

Runnels & Burry, for complainants.
Kelligar & Ferneau, for respondents.

MUNGER, District Judge. This is an action for the partition of
certain real estate in Nemaha county, Neb., and an accounting for the
rents and profits therefrom. The material facts are that one Julien
Bahuaud, a native citizen and subject of France, came to the United
States and settled in Nemaha county, Neb., in 1860, and resided there
to the time of his death, June 16, 1899. In 1865 he declared his in-
tention of becoming a citizen of the United States before a court of
record in said Nemaha county, and received from said court a certifi-
cate to that effect. He never took out any other naturalization pa-
pers, but participated in the various annual elections held in said
county. At the time of his death he was the owner of certain real
estate in said county, described in the petition, of the value of about
$40,000. He died intestate, leaving no will or children. Complainants
are brothers and sisters of deceased, and descendants of brothers and
sisters, and are each and all residents and citizens of the republic of
France. The defendant Louise B. Bize is a sister of deceased, a resi-
dent and citizen of the United States. The several parties claim in-
terest in said real estate by inheritance from deceased. On the part
of complainants it is claimed: First, that deceased was not a citizen
of the United States, but an alien, and hence they are entitled to in-
herit under the statutes of Nebraska; second, that, if deceased was a

citizen of the United States, the statute of Nebraska which prohibits a nonresident alien from inheriting the real estate of a citizen of Nebraska is inoperative, by virtue of the treaty of 1853 between the United States and France. On the part of the defendants it is claimed that the deceased was a citizen of Nebraska, and that the statute of Nebraska is operative notwithstanding said treaty. The two questions, then, for consideration are: (1) Was deceased a citizen of the United States? (2) Is the statute of Nebraska which prohibits nonresident aliens from inheriting real estate from a citizen of Nebraska suspended or inoperative, by virtue of the treaty referred to, as to citizens of the republic of France?

It is claimed on the part of respondents that deceased, being a resident and inhabitant of the state of Nebraska at the time the state was admitted into the Union, and having declared his intention to become a citizen of the United States, became naturalized by the terms of the enabling act; and in support of this contention the case of Boyd v. Nebraska, 143 U. S. 135, 12 Sup. Ct. 375, 36 L. Ed. 103, is cited, as holding that the enabling act admitting Nebraska into the Union provided a collective naturalization of all inhabitants of Nebraska who had declared their intention to become citizens. On the part of the complainants it is contended that the case of Boyd v. Nebraska is not an authority in that respect, for the reason that the decision of the court, eight members only participating, was only upon the question as to the sufficiency of certain allegations in the petition to resist the effect of a general demurrer; that the law as to collective naturalization was only concurred in by four members of the court, three members dissenting therefrom, and a fourth dissenting from the judgment upon the ground that the court had no jurisdiction. I am of the opinion, however, that the case of Boyd v. Thayer is an authority sustaining the doctrine of collective naturalization, and as holding that all of the inhabitants of the territory of Nebraska who had theretofore declared their intention to become citizens were by the act of admission of the state into the Union naturalized as citizens of the United States. That such is understood to be the effect of that decision by the court of appeals in this circuit I think clear by the statement in City of Minneapolis v. Reum, 6 C. C. A. 31, 56 Fed. 576–580, wherein Judge Sanborn, referring to that case, says:

"Governor Boyd was there held to be one of a class of foreign-born residents that was naturalized by the act of congress admitting the state of Nebraska into the Union."

That the supreme court of the United States so understand the effect of the decision of Boyd v. Nebraska I think clear by the statement of Justice Brown in Bolln v. Nebraska, 176 U. S. 83–88, 20 Sup. Ct. 287, 44 L. Ed. 382, wherein he says:

"The legislation of congress connected with the admission of Nebraska into the Union, so far as it bore upon the question of citizenship, was fully considered by this court in the case of Boyd v. Nebraska, 143 U. S. 135, 12 Sup. Ct. 375, 36 L. Ed. 103, and the conclusion reached that upon its admission into the Union the citizens of what had been the territory became the citizens of the United States and of the state."

I am therefore of the opinion that Julien Bahuaud was at the time of his death a naturalized citizen of the United States; that he became such upon the admission of Nebraska as a state of the Union. This leaves for consideration the remaining question, as to whether the treaty with France in 1853 suspends or renders inoperative the legislative enactment of the state of Nebraska approved March 16, 1889. The seventh article of the treaty, being the only provision applicable to the consideration of this case, is as follows:

"In all the states of the Union whose existing laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing personal and real property by the same title and in the same manner as the citizens of the United States. They shall be free to dispose of it as they may please, either gratuitously, or for value received, by donation, testament, or otherwise, just as those citizens themselves; and in no case shall they be subjected to taxes on transfer, inheritance, or any others different from those paid by the latter, or to taxes which shall not be equally imposed. As to the states of the Union by whose existing laws aliens are not permitted to hold real estate, the president engages to recommend to them the passage of such laws as may be necessary for the purpose of conferring this right. In like manner, but with the reservation of the ulterior right of establishing reciprocity in regard to possession and inheritance, the government of France accords to the citizens of the United States the same rights within its territory, in respect to real and personal property and to inheritance, as are enjoyed there by its own citizens."

This provision of the treaty was construed by the supreme court in Geofroy v. Riggs, 133 U. S. 258, 10 Sup. Ct. 295, 33 L. Ed. 642, wherein it is said:

"As we read the article, it declares that in all the states of the Union by whose laws aliens are permitted to hold real estate, so long as such laws remain in force, Frenchmen shall enjoy the right of possessing personal and real property by the same title and in the same manner as citizens of the United States. They shall be free to dispose of it as they may please,—by donation, testament, or otherwise,—just as those citizens themselves. But, as to the states by whose existing laws aliens are not permitted to hold real estate, the treaty engages that the president shall recommend to them the passage of such laws as may be necessary for the purpose of conferring that right. * * * We are therefore of opinion that this is the meaning of the article in question,—that there shall be reciprocity in respect to the acquisition and inheritance of property in one country by the citizens of the other; that is, in all political communities in the United States where legislation permits aliens to hold real estate the disability of Frenchmen from alienage in disposing and inheriting property, real and personal, is removed, and the same rights of disposition and inheritance of property in France is accorded to citizens of the United States as are there enjoyed by its own citizens."

This provision of the treaty, as construed by the supreme court, permits a citizen of France to acquire, possess, and inherit real estate to the same extent and in the same manner as citizens of the United States in those states of the Union by whose laws aliens are permitted to acquire and hold real estate. By article 6 of the constitution of the United States it is provided:

"And all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

It is not an open question that the United States has power to make treaties removing the disability of aliens to inherit; that

such treaties are a valid exercise of and within the powers conferred by the constitution of the United States. Hauenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628; Geofroy v. Riggs, 133 U. S. 258, 10 Sup. Ct. 295, 33 L. Ed. 642; Opel v. Shoup, 100 Iowa, 407, 69 N. W. 560, 37 L. R. A. 583; Wunderle v. Wunderle, 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84, and cases cited therein.

Section 25, art. 1, of the constitution of Nebraska is as follows:

> "No distinction shall ever be made by law between resident aliens and citizens in reference to the possession or descent of property."

The act of the legislature of Nebraska approved March 16, 1889 (Laws 1889, p. 483), by its first section, provides:

> "Non-resident aliens and corporations not incorporated under the laws of the state of Nebraska, are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise, only as hereinafter provided, except that the widow and heirs of aliens who have heretofore acquired lands in this state under the laws thereof, may hold such lands by devise or descent for a period of ten (10) years and no longer, and if at the end of such time herein limited such lands so acquired have not been sold to a bona fide purchaser for value, or such alien heirs have not become residents of this state, such lands shall revert and escheat to the state of Nebraska, and it shall be the duty of the county attorney in the counties where such lands are situated to enforce forfeitures of all such lands as provided by this act."

By the third section of the act a nonresident alien who owned land in the state at the time of the taking effect of the act was authorized to dispose of the same at any time during his life. Section 4 provided that the act should not prevent nonresident aliens from having liens upon real estate, from taking a valid title to the real estate subject to such liens, or from enforcing such liens by judgment, and becoming the purchaser of such real estate at judicial sale, but providing that lands so acquired should be sold within 10 years after the title thereto was perfected, and providing further that nothing in the act should be construed to prohibit any nonresident alien or foreign corporation from purchasing or acquiring title to so much real estate as should be necessary for the purpose of erecting and maintaining manufacturing establishments. The act further provided that its provisions should not apply to any real estate lying within the corporate limits of cities and towns. The statute and constitutional provisions before referred to do not prohibit all aliens from acquiring and holding real estate. Their prohibitory provisions apply only to aliens who are nonresidents. A resident alien may acquire possession and hold real estate in the same manner, by the same title, as a citizen. As to real estate lying within the corporate limits of cities and towns, an alien, whether resident or nonresident, may hold and acquire real estate by inheritance or otherwise. Hence it is clear that Nebraska is one of the states of the Union which authorize aliens to hold real estate, and that the provision of the treaty referred to is applicable thereto. The provisions of the treaty, as construed by the supreme court, apply to all states by whose laws an alien, whether designated as resident or nonresident, is permitted to hold real estate. In such states, where a resident alien is permitted to hold real estate, the prohibition as to nonresidents

holding title to real estate by inheritance or otherwise is inoperative, by virtue of the treaty, as to citizens of the republic of France.

Judgment will be entered finding the several interests of the parties to the real estate described to be as alleged in the petition, and that partition thereof be made. If the parties are unable to agree as to the rents and profits of the real estate during the time stated, the case will be referred to a master to take proofs in respect thereof. Counsel for complainants will prepare the proper decree, saving to respondents all proper exceptions, and submit same to counsel for respondents before presenting same to the court for signature.