## CROSSE *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY

[No. 223, September Term, 1966 (Adv.).]

*Decided, per curiam, July 1, 1966.*

*Opinion filed July 21, 1966.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, OPPENHEIMER and BARNES, JJ.

*St. George I. B. Crosse, III,* in proper person, for appellant.

*Edward L. Blanton, Jr., Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

After argument, by per curiam order, we reversed the order of the Superior Court of Baltimore City which denied the appellant's petition for a writ of mandamus to compel the Board of Supervisors of Elections of Baltimore City to accept and certify his candidacy for Sheriff of Baltimore City, and ordered that the mandate directing the writ of mandamus prayed for below be issued forthwith. The reasons for our order follow.

The question involved is whether the appellant is qualified to become a candidate under the provisions of Article IV Section 44 of the Maryland Constitution. The material provisions of that Section are as follows:

> "There shall be elected in each county and in Baltimore City * * * one person, resident in said county, or City, above the age of twenty-five years and at least five years preceding his election, a citizen of the State, to the office of Sheriff."

The facts are not in dispute. The appellant was born in the West Indies and immigrated to the United States in June of 1957. He and his family established their residence in Crisfield, Maryland. Upon reaching his eighteenth birthday, and upon signing his Declaration of Intention to become a citizen

of the United States under the federal Naturalization law, he enlisted in the United States Army, served for approximately three years and was given an honorable discharge in 1960. He established his residence in Salisbury, Maryland, and matriculated at the Maryland State College from which he was graduated in 1964. He then entered the University of Maryland Law School and has successfully completed his first year. In May of 1964 he established his home in Baltimore City, where he has since resided. On April 29, 1966, he became a naturalized citizen of the United States and a registered voter of the State of Maryland. On May 26, 1966, the appellant filed his candidacy for the office of Sheriff of Baltimore City with the Board of Supervisors of Elections of Baltimore City. His Certificate of Nomination was notarized and accepted, as was his filing fee of $150. He received the usual material given to all candidates who file for public office. On June 4, 1966, he received a letter from the Board advising him that he did not qualify as a candidate for the office of Sheriff because he did not become a citizen of the United States until April 29, 1966, and that under the Fourteenth Amendment of the United States Constitution he did not become a citizen of the State of Maryland until that date. The Board acted on the advice of its counsel, the Attorney General of Maryland, and returned the application to the appellant together with the filing fee.

The court below held and the Board contends that the appellant did not become a citizen of Maryland, under the provisions of the Maryland Constitution, until he became a citizen of the United States, and is therefore ineligible to be Sheriff of Baltimore City because he was not a United States citizen at least five years preceding the election. We disagree.

Both before and after the Fourteenth Amendment to the federal Constitution, it has not been necessary for a person to be a citizen of the United States in order to be a citizen of his state. *United States v. Cruikshank*, 92 U. S. 542, 549 (1875) ; *Slaughter-House Cases*, 83 U. S. (16 Wall.) 36, 73-74 (1873) ; and see *Short v. State*, 80 Md. 392, 401-02, 31 Atl. 322 (1895). See also Spear, *State Citizenship*, 16 Albany L.J. 24 (1877). Citizenship of the United States is defined by the Fourteenth Amendment and federal statutes, but the requirements for cit-

izenship of a state generally depend not upon definition but the constitutional or statutory context in which the term is used. *Risewick v. Davis,* 19 Md. 82, 93 (1862); *Halaby v. Board of Directors of University of Cincinnati,* 162 Ohio St. 290, 293, 123 N. E. 2d 3 (1954) and authorities therein cited.

The decisions illustrate the diversity of the term's usage. In *Field v. Adreon,* 7 Md. 209 (1854), our predecessors held that an unnaturalized foreigner, residing and doing business in this State, was a citizen of Maryland within the meaning of the attachment laws. The Court held that the absconding debtor was a citizen of the State for commercial or business purposes, although not necessarily for political purposes. *Dorsey v. Kyle,* 30 Md. 512, 518 (1869), is to the same effect. Judge Alvey, for the Court, said in that case, that "the term citizen, used in the formula of the affidavit prescribed by the 4th section of the Article of the Code referred to, is to be taken as synonymous with inhabitant or permanent resident."

Other jurisdictions have equated residence with citizenship of the state for political and other non-commercial purposes. *In re Wehlitz,* 16 Wis. 443, 446 (1863), held that the Wisconsin statute designating "all able-bodied, white, male citizens" as subject to enrollment in the militia included an unnaturalized citizen who was a resident of the state. "Under our complex system of government," the court said, "there may be a citizen of a state, who is not a citizen of the United States in the full sense of the term." *McKenzie v. Murphy,* 24 Ark. 155, 159 (1863), held that an alien, domiciled in the state for over ten years, was entitled to the homestead exemptions provided by the Arkansas statute to "every free white citizen of this state, male or female, being a householder or head of a family * * *" The court said: "The word 'citizen' is often used in common conversation and writing, as meaning only an inhabitant, a resident of a town, state, or county, without any implication of political or civil privileges; and we think it is so used in our constitution." *Halaby v. Board of Directors of University, supra,* involved the application of a statute which provided free university instruction to citizens of the municipality in which the university is located. The court held that the plaintiff, an alien minor whose parents were residents of and conducted a

business in the city, was entitled to the benefits of that statute, saying: "It is to be observed that the term, 'citizen,' is often used in legislation where 'domicile' is meant and where United States citizenship has no reasonable relationship to the subject matter and purpose of the legislation in question."

Closely in point to the interpretation of the constitutional provision here involved is a report of the Committee of Elections of the House of Representatives, made in 1823. A petitioner had objected to the right of a Delegate to retain his seat from what was then the Michigan Territory. One of the objections was that the Delegate had not resided in the Territory one year previous to the election in the status of a citizen of the United States. An act of Congress passed in 1819 provided that "every free white male citizen of said Territory, above the age of twenty-one years, who shall have resided therein one year next preceding" an election shall be entitled to vote at such election for a delegate to Congress. An act of 1823 provided that all citizens of the United States having the qualifications set forth in the former act shall be eligible to any office in the Territory. The Committee held that the statutory requirement of citizenship of the Territory for a year before the election did not mean that the aspirant for office must also have been a United States citizen during that period. The report said: "It is the person, the individual, the man, who is spoken of, and who is to possess the qualifications of residence, age, freedom, &c. at the time he offers to vote, or is to be voted for * * *". Upon the filing of the report, and the submission of a resolution that the Delegate was entitled to his seat, the contestant of the Delegate's election withdrew his protest, and the sitting Delegate was confirmed. *Biddle v. Richard,* Clarke and Hall, *Cases of Contested Elections in Congress* (1834) 407, 410.

There is no express requirement in the Maryland Constitution that sheriffs be United States citizens. Voters must be, under Article I, Section 1, but Article IV, Section 44 does not require that sheriffs be voters. A person does not have to be a voter to be a citizen of either the United States or of a state, as in the case of native-born minors. In Maryland, from 1776 to 1802, the Constitution contained requirements of property

ownership for the exercise of the franchise; there was no exception as to native-born citizens of the State. Steiner, *Citizenship and Suffrage in Maryland* (1895) 27, 31.

The Maryland Constitution provides that the Governor, Judges and the Attorney General shall be qualified voters, and therefore, by necessary implication, citizens of the United States. Article II, Section 5, Article IV, Section 2, and Article V, Section 4. The absence of a similar requirement as to the qualifications of sheriffs is significant. So also, in our opinion, is the absence of any period of residence for a sheriff except that he shall have been a citizen of the State for five years. The Governor, Judges and Attorney General in addition to being citizens of the State and qualified voters, must have been a resident of the State for various periods. The conjunction of the requisite period of residence with state citizenship in the qualifications for sheriff strongly indicates that, as in the authorities above referred to, state citizenship, as used in the constitutional qualifications for this office, was meant to be synonymous with domicile, and that citizenship of the United States is not required, even by implication, as a qualification for this office. The office of sheriff, under our Constitution, is ministerial in nature; a sheriff's function and province is to execute duties prescribed by law. See *Buckeye Dev. Corp. v. Brown & Schilling, Inc.,* 243 Md. 224, 220 A. 2d 922 (1966), and the concurring opinion of Le Grand, C.J. in *Mayor & City Council of Baltimore v. State ex rel. Bd. of Police,* 15 Md. 376, 470, 488-90 (1860).

It may well be that the phrase, "a citizen of the State," as used in the constitutional provisions as to qualifications, implies that a sheriff cannot owe allegiance to another nation. By the naturalization act of 1779, the Legislature provided that, to become a citizen of Maryland, an alien must swear allegiance to the State. The oath or affirmation provided that the applicant renounced allegiance "to any king or prince, or any other State or Government." Act of July 1779, Ch. VI; Steiner, *op. cit.* 15. In this case, on the admitted facts, there can be no question of the appellant's undivided allegiance.

The court below rested its decision on its conclusion that, under the Fourteenth Amendment, no state may confer state

citizenship upon a resident alien until such resident alien becomes a naturalized citizen of the United States. The court relied, as does the Board in this appeal, upon *City of Minneapolis v. Reum*, 56 Fed. 576, 581 (8th Cir. 1893). In that case, an alien resident of Minnesota, who had declared his intention to become a citizen of the United States but had not been naturalized, brought a suit, based on diversity of citizenship, against the city in the Circuit Court of the United States for the District of Minnesota under Article III, Section 2 of the United States Constitution which provides that the federal judicial power shall extend to "Controversies between * * * a State, or the Citizens thereof, and foreign States, Citizens or Subjects." At the close of the evidence, the defendant moved to dismiss the action for want of jurisdiction, on the ground that the evidence failed to establish the allegation that the plaintiff was an alien. The court denied the motion, the plaintiff recovered judgment, and the defendant claimed error in the ruling on jurisdiction. The Circuit Court of Appeals affirmed. Judge Sanborn, for the court, stated that even though the plaintiff were a citizen of the state, that fact could not enlarge or restrict the jurisdiction of the federal courts over controversies between aliens and citizens of the state. The court said: "It is not in the power of a state to denationalize a foreign subject who has not complied with the federal naturalization laws, and constitute him a citizen of the United States or of a state, so as to deprive the federal courts of jurisdiction * * *".

*Reum* dealt only with the question of jurisdiction of federal courts under the diversity of citizenship clause of the federal Constitution. That a state cannot affect that jurisdiction by granting state citizenship to an unnaturalized alien does not mean it cannot make an alien a state citizen for other purposes. Under the Fourteenth Amendment all persons born or naturalized in the United States are citizens of the United States and of the state in which they reside, but we find nothing in *Reum* or any other case which requires that a citizen of a state must also be a citizen of the United States, if no question of federal rights or jurisdiction is involved. As the authorities referred to in the first portion of this opinion evidence, the law is to the contrary.

Absent any unconstitutional discrimination, a state has the right to extend qualification for state office to its citizens, even though they are not citizens of the United States. This, we have found, is what Maryland has done in fixing the constitutional qualifications for the office of sheriff. The appellant meets the qualifications which our Constitution provides.