Justice Thomas,
dissenting.
Petitioners, Houston residents, filed suit against the city of Houston and alleged that the city violated the Equal Protection Clause when it redrew its single-member city council districts in 1997. Petitioners argued that the city engaged in racial gerrymandering when it devised the 1997 plan and that the districts did not conform to the one-person, one-vote requirements articulated by this Court. The District Court granted summary judgment to the city, and the Court of Appeals affirmed. Because petitioners present an important legal question over which Courts of Appeals disagree, I would grant certiorari.
When drawing its 1997 districting plan, the city faced the challenge of where to place the newly annexed Kingwood suburb, an overwhelmingly white community located in the northeastern most point of Houston. Had the city added Kingwood to the adjacent District B, the city would have been forced to move a number of persons out of District B into neighboring districts to avoid making District B disproportionately large. This shifting of people from one district to another allegedly would have jeopardized the strength of several “minority” districts, those districts containing primarily voters who are black or Hispanic. Instead, at least in part to avoid disrupting these minority districts, the city made Kingwood a part of District E, a predominantly white community located in the southeastern corner of Houston. Petitioners argue that this placement evidenced racial gerrymander- *1047 mg and that the city engaged in the systemic undersizing of “minority” districts. Simply put, petitioners contend that the city drew minority districts so that they would contain fewer people, and fewer voters, than would “majority” districts, comprising primarily voters who are white. According to petitioners, this un-dersizing was done .directly, by making minority districts smaller in terms of total population, and indirectly, by roughly equalizing district populations without regard to the citizen voting age population. Because each district would have a single representative in the city council, the alleged effect of this undersizing was to dilute the value of votes in districts with larger total populations and citizen voting age populations, i. e., districts that in this case comprised majority white populations.
I would grant certiorari on petitioners’ one-person, one-vote claim, which asks what measure of population should be used for determining whether the population is equally distributed among the districts. In Reynolds v. Sims, 377 U.S. 533 (1964), this Court held that “the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable.” Id., at 577; see Avery v. Midland County, 390 U.S. 474 (1968) (applying Reynolds’ one-person, one-vote holding to districting for the selection of local governmental representatives). Absolute parity of populations among districts has never been required. But “this Court has recognized that a state legislative apportionment scheme with a maximum population deviation exceeding 10% creates a prima facie case of discrimination.” Brown v. Thomson, 462 U.S. 835, 850 (1983) (O’Connor, J., concurring); see id., at 842-843 (opinion of the Court) (“Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations. A plan with larger disparities in population, however, creates a prima facie case of discrimination and therefore must be justified by the State” (citations omitted)). Having read the Equal Protection Clause to include a “one-person, one-vote” requirement, and having prescribed population variance that, without additional evidence, often will satisfy the requirement, we have left a critical variable in the requirement undefined. We have never determined the relevant “population” that States and localities must equally distribute among their districts.
*1048 Such a determination might be dispositive of whether the city has violated the Equal Protection Clause. If “population” means “total population,” the districts in the city’s 1997 plan had a less than 10% population variance. If, however, it means “citizen voting age population,” the maximum deviation is allegedly anywhere from 20% to 32.5%. Pet. for Cert. 3, and n. 4. The Fifth Circuit in this case held that the decision as to which population figures to use was “a choice left to the political process.” 206 F. 3d 502, 523 (2000). Likewise, the Fourth Circuit has held that the decision whether to use total population or voting age population is a political choice generally not reviewable by courts. Daly v. Hunt, 93 F. 3d 1212, 1227 (1996) (“This is quintessentially a decision that should be made by the state, not the federal courts, in the inherently political and legislative process of apportionment”). In contrast, the Ninth Circuit has held that districting based on voting populations instead of the total population would have been unconstitutional. Garza v. County of Los Angeles, 918 F. 2d 763, 773-776 (1991).
In other contexts, I might be inclined to wait for further conflict to develop among the courts of appeals. In this case, however, because every jurisdiction in the country will have to accommodate the 2000 census data in the near fiiture, it behooves us to address this question as soon as possible. The one-person, one-vote principle may, in the end, be of little consequence if we decide that each jurisdiction can choose its own measure of population. But as long as we sustain the one-person, one-vote principle, we have an obligation to explain to States and localities what it actually means.