You have asked our opinion about the use of the "total residents" numbers from the United States Census Bureau for the purpose of State legislative redistricting. In the letter requesting this opinion you questioned the constitutionality of the use, for purposes of redistricting, of census numbers that include non-citizens. Specifically, you have asked:
1. Does the State of Maryland require that voters in State elections be United States citizens?
2. Does the State of Maryland require that voters in State elections be Maryland citizens?
3. Does the practice of drawing the legislative districts based on total population violate the one person / one vote requirements of theFourteenth Amendment of the United States Constitution as interpreted by the Supreme Court?
In our opinion, the answers to your questions are:
1. The Maryland Constitution requires that a person be a United States citizen to vote in a State election.
2. The Maryland Constitution requires that a person be a citizen of Maryland to vote in a State election.
3. The use of total population figures as the basis for State legislative redistricting does not violate the one person / one vote requirement of the Fourteenth Amendment. *Page 126 
 I Citizenship and Eligibility to Vote
The State Constitution provides, in relevant part, that:
 . . . Every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which he resides at all elections to be held in this State.
Maryland Constitution, Article I, § 1. Furthermore, the statute on voter registration provides that "an individual may become registered to vote" if the individual is a citizen of the United States and is a resident of the State as of the day the individual seeks to register. Annotated Code of Maryland, Election Law Article ("EL"), § 3-102(a). These provisions make clear that both the Constitution and laws of the State require that a person be a United States citizen to vote in a State election.
Neither the Maryland Constitution nor the statutory provisions governing voting expressly make State citizenship a prerequisite to voting. However, they do require that the voter be a resident of the State, and both residency and state citizenship are generally interpreted as synonymous with domicile. Crosse v. Board of Supervisors of Elections,243 Md. 555, 561, 221 A.2d 431 (1966) (State citizenship); Oglesby v.Williams, 372 Md. 360, 372-373, 812 A.2d 1061 (2002) (residency). Moreover, the Fourteenth Amendment of the United States Constitution provides, in pertinent part, that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Thus, by requiring both United States citizenship and residency in the State, Article I, § 1 of the Maryland Constitution effectively requires that a person be a citizen of Maryland to vote in State elections.
 II Use of Total Population Count for Redistricting A. Redistricting Under the Maryland Constitution
The Maryland Constitution provides that legislative districts shall be "of substantially equal population." Maryland Constitution, Article III, *Page 127 
§ 4. It also requires that the boundaries of the legislative districts for electing the members of the Senate and the House of Delegates be set "[f]ollowing each decennial census of the United States." Article III, § 5. It does not, however, expressly require that the census figures be used as a basis for that redistricting. Accordingly, this Office has previously advised that data other than the census headcount could be used for redistricting. 76 Opinions of the Attorney General 209, 212 (1991). However, any alternative data must be clearly superior and uniformly applied:
 because the federal census is presumed accurate until proven otherwise, any other basis for redistricting, including adjustment figures, must be thoroughly documented, have a high degree of accuracy, and be applied in a systematic manner throughout the entire State,. . . .
Id. at 209. Historically, the State has always used the total population figures from the United States census.
B. Supreme Court Decisions on One Person/One Vote
In Baker v. Carr, 369 U.S. 186, 237 (1962), the Supreme Court held that "allegations of a denial of equal protection" by malapportioned legislative districts "present a justiciable constitutional cause of action upon which appellants are entitled to a trial and a decision." The Court has firmly established that Equal Protection requires that districts from which State representatives are elected must be as nearly equal in population as is practicable. Reynolds v. Sims, 377 U.S. 533,577 (1964); Maryland Committee for Fair Representation v. Tawes,377 U.S. 656, 674 (1964); Davis v. Mann, 377 U.S. 678, 690 (1964); Roman v.Sincock, 377 U.S. 695, 708 (1964); Lucas v. Forty-Fourth GeneralAssembly of Colorado, 377 U.S. 713, 734 (1964).
These decisions do not address whether the "population" in question is total population or the portion of the population that is eligible to vote. Burns v. Richardson, 384 U.S. 73, 91 (1966) (noting that the Supreme Court has "carefully left open . . . what population was being referred to"); Chen v. City of Houston, 532 U.S. 1046 (2001) (Thomas, J., dissenting from denial of certiorari) ("We have never determined the relevant `population' that States and localities must equally distribute among their districts."); see also Murphy, Garza v. County of LosAngeles: The Dilemma over Using Elector Population as Opposed to TotalPopulation in Legislative Apportionment, 41 Case W. Res. L.Rev. 1013, 1025-1026 (1991) ("the Supreme Court has offered no clear guidance on the matter, *Page 128 
[and has handed] down opinions with language supporting both sides of the issue"). As the California Supreme Court has noted:
 Over the years the court has "used the words `inhabitant,' `citizen,' `resident,' and `voter' almost interchangeably in describing those who deserve representation, without indicating which of these bases for measuring substantial equality is most appropriate." (Note, Reapportionment, 79 Harv. L.Rev. 1226, 1254 (1966)). In particular, the court has tended to treat as fungible two quite distinct concepts: first, that each district should contain equal numbers of people — a "population" standard; and second, that each voter is entitled to have his ballot carry an equal impact — a "voter" standard. (See Note, Reapportionment on the Sub-State Level of Government: Equal Representation or Equal Vote?, 50 B.U. L.Rev. 231, 238-247 (1970)).
Calderon v. City of Los Angeles, 481 P.2d 489, 491 (Cal. 1971).[1]
The Supreme Court has left open the possibility that redistricting could be based on figures other than total population. While it has stated that "a bicameral state legislature must be apportioned on a population basis,"[2] the Court has also upheld a New York plan with districts based on citizen population rather than total population without appearing to consider whether there is a constitutional difference.[3] In other cases, the Court has recognized that the use of total population is not necessarily required. For example, the use of registered voter numbers was upheld, at least on an interim basis, inBurns v. Richardson, 384 U.S. 73 (1966). There the Supreme Court noted that Hawaii had a high level of voter *Page 129 
registration, and that "apportionment achieved by use of a registered voters basis substantially approximated that which would have appeared had state citizen population been the guide." Id. at 96. However, the Court further stated that it was not "deciding that the validity of the registered voters basis as a measure has been established for all time or circumstances, in Hawaii or elsewhere." Id. And in Kirkpatrick v.Preisler, 394 U.S. 526, 535 (1969), the Court suggested that, where shifts in population could be predicted with a high degree of accuracy, they could properly be taken into account in redistricting, but the Court rejected adjustments made without the support of clearly accurate numbers.[4]
One possible reason for the absence of clear guidance is that all possible bases of redistricting have flaws of one sort or another. The United States census is "as accurate as such immense undertakings can be, but they are inherently less than absolutely accurate." Gaffney v.Cummings, 412 U.S. 735, 745 (1973). The census measures population at a particular time and does not take account of population changes that will occur over the next ten years. Id. at 746. Moreover, the census does not count voters: "The proportion of the census population too young to vote or disqualified by alienage or nonresidence varies substantially among the States and among localities within the States."Id. at 746-747. *Page 130 
In addition, neither the census nor any other source provides accurate information concerning the number of eligible voters in the various jurisdictions of the State. Alternatives that have been suggested all present problems of one sort or another. The use of voting-age population, which is available as part of the census numbers, does not account for the fact that not all persons of voting age are eligible to vote. Daly v. Hunt, 93 F.3d 1212, 1227-1228 (4th Cir. 1996). Thus, the votes of voters in districts with large numbers of noncitizens will be given greater weight than those of voters where there are fewer noncitizens. The use of registration numbers or the numbers of voters in a previous election, on the other hand, excludes persons who are eligible to vote, but have not done so. Burns v. Richardson, 384 U.S. 73, 92
(1966). Both of these numbers are subject to fluctuation from election to election depending on the candidates and the issues in a particular election. Id. at 93. In addition, demographic differences in voter registration and turn-out could result in votes from some districts having greater weight than those in other districts. Other ad hoc methods of approximating eligible voters by excluding the military, excluding students living in dorms, or making other similar adjustments, have been rejected. Carrington v. Rash, 380 U.S. 89 (1965) (military); DuBois v.City of College Park, 286 Md. 677 (1980) (students in dorms); Kirkpatrickv. Preisler, 394 U.S. 526 (1969) ("haphazard adjustments").
C. Equal Protection Challenges to the Use of Total Population
One of the first challenges to the use of total population as a basis for redistricting came in Garza v. County of Los Angeles, 918 F.2d 763
(9th Cir. 1990), cert. denied, 498 U.S. 1028 (1991). In that case, the plaintiffs claimed that the Voting Rights Act required creation of a minority district based on current population figures. The plaintiffs relied on total population figures; the defendant County argued that use of total population would unconstitutionally over-weight the vote of citizens in districts with high non-citizen populations and that the use of voting population was constitutionally required. The Ninth Circuit held that, while Burns v. Richardson, 384 U.S. 73, 91-92 (1966), would arguably permit states to consider the distribution of voting population, it did not require them to do so, and that use of total population for redistricting continued to be valid under the holding ofReynolds v. Sims. The Court noted that basing districts on voters rather than total population results in serious population inequities across districts and that: *Page 131 
 Residents of the more populous districts thus have less access to their elected representative. Those adversely affected are those who live in the districts with a greater percentage of non-voting populations, including aliens and children. Because there are more young people in the predominantly Hispanic District 1 (34.5% of the L.A. County Hispanic population . . .) citizens of voting age, minors and others residing in the district will suffer diminishing access to government in a voter-based apportionment scheme.
Garza v. County of Los Angeles, 918 F.2d at 774-75. The Ninth Circuit discussed the differences between the right of representation — held by all residents, whether disqualified from voting or not — and the right to vote. It concluded that the equality requirement applied to the right of representation, thus protecting minors, noncitizens, the mentally ill and felons in their right to participate in government by petitioning their representatives. Id. at 775. The right to representational equality also encompasses the right to be represented by a person who represents the same number of constituents as other members of the same legislative body.
In dissent, Judge Kozinski concluded that "what lies at the core of one person one vote is the principle of electoral equality, not that of equality of representation." Garza, 918 F.2d at 785. Relying on the language in redistricting cases that focuses on vote dilution, Judge Kozinski concluded that where use of eligible voter numbers would yield a different result than the use of total population, the Equal Protection Clause requires the use of eligible voter numbers.
The debate over the use of total population figures also was addressed in Daly v. Hunt, 93 F.3d 1212 (4th Cir. 1996). In that case, plaintiffs challenged the redistricting plan for a county board of commissioners and board of education. The districts were not substantially equal in terms of voting age population, though they were substantially equal in total population. The district court, relying on the dissent of Judge Kozinski in Garza, agreed with plaintiffs and found the plan invalid based on the imbalance in voting age population. The Fourth Circuit reversed, expressly disagreeing with Judge Kozinski's assertion that the Supreme Court's prior one person/one vote cases indicate that electoral equality is more important than representational equality. Id. at 1223-25. Instead, the Court held that, in the absence of a clear pronouncement from the Supreme Court on the issue, deference is due to *Page 132 
the choice of the State with respect to the basis for redistricting. As a result, the Fourth Circuit held that use of total population for apportionment was appropriate, especially where the "[Supreme] Court has consistently held that total population is a reasonable apportionment base." Id. at 1228. Thus, it held that the district court had erred by effectively requiring redistricting on the basis of voting age population.
In Chen v. City of Houston, 206 F.3d 502 (5th Cir. 2000), cert.denied, 532 U.S. 1046 (2001), the Fifth Circuit reached a similar conclusion, upholding districts that were of substantially equal population based on total population, but not equal when voting age population was considered. The Court rejected the reasoning of both opinions in Garza but agreed with the Fourth Circuit opinion in Daly that a court should defer to the basis of redistricting chosen by the jurisdiction in question — in that case, total population. Id.
at 527-528.
In summary, the federal appellate courts have upheld against constitutional challenges the use of total population numbers for purposes of state legislative apportionment. The Court of Appeals for the Fourth Circuit, which includes Maryland, has indicated that the courts should defer to a state's political branches in making a choice between total population and eligible voter numbers. Accordingly, it is our view that the State may choose to base redistricting on total population figures from the United States census, and that such a choice would not violate the one person/one vote requirement of the Fourteenth Amendment to the United States Constitution.
 III Conclusion
For the reasons set forth above, it is our opinion that:
1. The Maryland Constitution requires that a person be a United States citizen to vote in a State election.
2. The Maryland Constitution requires that a person be a citizen of Maryland to vote in a State election. *Page 133 
3. The use of total population figures as the basis for State legislative redistricting does not violate the one person-one vote requirement of the Fourteenth Amendment.
Douglas F. Gansler Attorney General
Kathryn M. Rowe Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The language of cases relating to apportionment of districts for Congress is equally elusive. For example, in Wesberry v. Sanders,376 U.S. 1, 13-14 (1964), the Supreme Court stated that the intent was that the number of inhabitants be the measure of representation in the House of Representatives, and spoke of equal representation for equal numbers of people, but also said that this principle would be defeated if some voters have a greater voice in choosing a member of Congress than others.
[2] Reynolds v. Sims, 377 U.S. 533, 568 (1964).
[3] WMCA, Inc. v. Lomenzo, 377 U.S. 633, 641 (1964).
[4] Lower court cases addressing the use of registered voters as a basis for redistricting reflect the lack of clear Supreme Court guidance as to what figures may, or must, be used. Some have upheld the use of registered voter numbers based on the facts of the case before them, generally finding that the area in question has high registration and that there has been no showing of a significant difference in result between registered voters and total population, but leaving open the possibility that the use of registration figures could violate Equal Protection in other cases. Buckley v. Hoff, 243 F.Supp. 873 (D. Vt. 1965); Baker v. Carr, 247 F.Supp. 629, 636 n. 5 (D. Tenn. 1965), cf.,DuBois v. City of College Park, 293 Md. 676, 447 A.2d 838 (1982), cert.denied, 459 U.S. 1146 (1983) (redistricting using voter registration notper se unconstitutional). Other courts have placed a high burden on the State, holding that use of registered voter numbers is appropriate only if it is shown to reach "a result that is substantially similar to that which would be reached using total population." Ellis v. Mayor CityCouncil of Baltimore, 352 F.2d 123 (4th Cir. 1965); Travis v. King,552 F.Supp. 554, 565 (D. Hawaii 1982); Kapral v. Jepson, 271 F.Supp. 74
(D. Conn. 1967); Calderon v. City of Los Angeles, 481 P.2d 489, 490 (Cal. 1971). *Page 134