### Ex parte GRABER.

(District Court, N. D. Alabama, S. D. January 15, 1918.)

*(Syllabus by the Court.)*

1. WAR ⬤➡11—"ALIEN ENEMY"—DECLARATION OF INTENTION.

A subject or citizen of the Imperial and Royal Austro-Hungarian Government, residing within the United States when Congress declared a state of war to exist between these governments, and who has never been actually naturalized, but has merely declared his intention to become a citizen of the United States, is in law an alien enemy.

[Ed. Note.—For other definitions, see Words and Phrases, Alien Enemy.]

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. WAR ⬅11—ALIEN ENEMIES—ARREST AND DETENTION—STATUTES.

Section 4067, Rev. St. (Comp. St. 1916, § 7615), vesting the President with summary power to order the arrest and detention of alien enemies, is not limited or restricted by section 4069, Rev. St. (Comp. St. 1916, § 7617), authorizing United States courts, upon complaint and after hearing, to detain alien enemies; such section providing simply a method of dealing with alien enemies additional to that in section 4067, Rev. St.

3. HABEAS CORPUS ⬅92(1)—DISPUTED QUESTIONS OF FACT—DETERMINATION.

The courts do not pass upon disputed questions of fact on habeas corpus.

4. HABEAS CORPUS ⬅16—ALIEN ENEMIES—ARREST AND DETENTION.

The action of the President of the United States, through the officials designated by law, in ordering the summary arrest and detention under section 4067, Rev. St., of an alien enemy, within the United States after the declaration of war between the United States and Austro-Hungary, is conclusive, and not subject to judicial review on habeas corpus.

Application for habeas corpus by Oscar Graber to secure his release from confinement as an alien enemy. Application denied.

W. H. McCary and William Vaughan, both of Birmingham, Ala., for petitioner.

Thos. D. Samford, U. S. Atty., of Opelika, Ala., and Hubert J. Turney, of Cleveland, Ohio, for the United States.

HENRY D. CLAYTON, District Judge. This application for habeas corpus is filed by Oscar Graber, who alleges that he is unlawfully restrained of his liberty by the United States marshal for the Northern district of Alabama. Petitioner avers that he was "formerly a citizen of Croatia, a subject state of the kingdom of Hungary, a part of the Imperial Austro-Hungarian Government"; that about 15 years ago petitioner came to the United States, and upon reaching the age of 21 years declared his intention of becoming a citizen of the United States, and later filed a petition for naturalization. Graber further avers that since the issuance of the proclamation of the President of the United States on December 11, 1917, he has been held in confinement by the United States marshal, and it appears that he is confined as an alien Austrian enemy under authority from the President.

Under the provisions of the President's proclamation all natives, citizens, denizens, or subjects of Austria-Hungary, being males of the age of 14 years and upwards, who shall be within the United States and not actually naturalized, and—

"of whom there may be reasonable cause to believe that he is aiding or about to aid the enemy, or who may be at large to the danger of the public peace or safety, or who violates or attempts to violate, or of whom there is reasonable ground to believe that he is about to violate any regulation duly promulgated by the President, or any criminal law of the United States, or of the states or territories thereof, will be subject to summary arrest by the United States marshal, or his deputy, or such other officer as the President shall designate, and to confinement in such penitentiary, prison, jail, military camp or other place of detention as may be directed by the President."

This proclamation was issued shortly after the passage of the joint resolution of the Senate and House of Representatives, dated Decem-

ber 7, 1917, declaring a state of war to exist between the United States and the Imperial and Royal Austro-Hungarian Government, and authorizing the President to employ the entire naval and military forces of the United States and the resources of the government to carry on the war and to bring the conflict to a successful termination. Section 4067, R. S. (Comp. Stat. 1916, § 7615), is as follows:

"Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States, by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being males of the age of fourteen years and upward, who shall be within the United States, and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed, as alien enemies. The President is authorized in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject, and in what cases, and upon what security their residence shall be permitted, and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety."

[1] 1. From what has been said above, it will be observed that Graber, the petitioner, has never actually been naturalized. Of course, his mere declaration of intention to become a citizen of the United States, such declaration never having been carried into effect, did not confer citizenship upon him; and such declaration of intention did not absolve Graber from the allegiance which he owes to the Austro-Hungarian government. He did not by his declaration of intention renounce his allegiance, but merely declared that it was his intention to do so at some future time; and so long as his foreign allegiance continues he remains an alien. Minneapolis v. Reum, 56 Fed. 576, 6 C. C. A. 31; In re Moses (C. C.) 83 Fed. 995. Graber has not divested himself of his alienage, and cannot do so until he becomes an American citizen by naturalization. It cannot be doubted that by the declaration of war he became in law an alien enemy, one who owes allegiance to an adverse belligerent. Lamar v. Browne, 92 U. S. 187, 23 L. Ed. 650.

[2] 2. The statutes of the United States provide two methods by which alien enemies may be restrained or removed. Under section 4067, R. S. (U. S. Comp. Stat. 1916, § 7615), quoted above, the President may direct the manner and degree of the restraint to which alien enemies shall be subject, and he is authorized to provide for the removal from the country of those who, not being permitted to reside within the United States, neglect or refuse to depart therefrom. Under section 4069, R. S. U. S. (U. S. Comp. Stat. 1916, § 7617), courts of the United States having criminal jurisdiction are authorized, after complaint and upon hearing, to cause alien enemies to be apprehended and confined or removed. This last section, however, is not a limitation or restriction upon the power given the President by section 4067, R. S., but provides an additional method of dealing with alien enemies. It

is clear that Congress did not intend that the power conferred on the President by section 4067, R. S., to remove alien enemies, should be exercised only as provided in section 4069, R. S., which requires a complaint against an alien enemy and a hearing. This latter method, with its attendant public trial, would oftentimes prove inadequate and ineffective, and the inevitable disclosing of facts would not always be best for the safety of the peace and security of the government. Congress recognized this and by the provisions of section 4067, R. S., vested the President with summary power to direct the confinement or removal of alien enemies.

[3] 3. Graber, in his petition for the writ, says that he has done nothing and contemplates doing nothing forbidden by the President's proclamation. His petition, then, in its last analysis, is reduced to a petition asking the court to review a disputed question of fact. Graber, as an alien enemy, and admittedly such by his own petition, confined by direction of the Executive, through the appropriate officers of the government, on the ground that he is about to violate a regulation duly promulgated by the President under authority of Congress, cannot be permitted to negative the fact, or the intention, by application for habeas corpus. Disputed questions of fact cannot be reviewed on habeas corpus. In re Strauss, 126 Fed. 327, 63 C. C. A. 99.

[4] 4. The President, acting in the manner and under the powers vested in him by law, has determined that the petitioner is a person who, either for the safety of the United States or for petitioner's own protection, should be restrained or interned. He has further decided that this alien enemy should be restrained as prescribed in section 4067, R. S. The officers of the law have taken the summary action authorized by that section, and the question is presented by petitioner whether this action of the President is subject to judicial review. The court thinks not.

The case of In re Moyer, 35 Colo. 159, 85 Pac. 190, 12 L. R. A. (N. S.) 979, 117 Am. St. Rep. 189, holds, and it is sound in principle and applicable here, that the decision of the chief executive of a state in suppressing insurrection is not subject to review in the courts. In that case Moyer, the petitioner, was arrested by authority of the commanding officer of the Colorado National Guard to prevent Moyer from taking part in an insurrection which the civil authorities had been unable to put down. The Governor of Colorado, acting under the authority conferred upon him by law, called out the militia to suppress the insurrection and restore law and order. The court said:

"By the reply it is alleged that, notwithstanding the proclamation and determination of the Governor that a state of insurrection existed in the county of San Miguel, as a matter of fact, these conditions did not exist at the time of such proclamation or the arrest of the petitioner, or at any other time. By section 5, art. 4, of our Constitution, the Governor is the commander in chief of the military forces of the state, * * * and he is thereby empowered to call out the militia to suppress insurrection. It must therefore become his duty to determine as a fact when conditions exist in a given locality which demand that, in the discharge of his duties as chief executive of the state, he shall employ the militia to suppress. This being true, the recitals in the proclamation to the effect that a state of insurrection existed in the county

of San Miguel cannot be controverted. Otherwise, the legality of the orders of the executive would not depend upon his judgment, but the judgment of another co-ordinate branch of the state government. In re Boyle [6 Idaho, 609] 57 Pac. 706 [45 L. R. A. 832, 96 Am. St. Rep. 286]; Luther v. Borden, 7 How. 1, 12 L. Ed. 581; Ex parte Moore, 64 N. C. 802; Martin v. Mott, 12 Wheat. (U. S.) 19, 6 L. Ed. 537."

And further, in the additional opinion of the Chief Justice (35 Colo. 164, 85 Pac. 209, 12 L. R. A. [N. S.] 979, 117 Am. St. Rep. 189), it is said:

"If the judicial department should undertake to review the facts upon which the Governor acted, it would be a direct interference with his authority, and an assumption of power on the part of the judiciary which does not exist."

The case of In re Boyle, 6 Idaho, 609, 57 Pac. 706, 45 L. R. A. 832, 96 Am. St. Rep. 286, cited in the opinion in the Moyer Case, is also in point. There the President of the United States, at the request of the Governor of the state, sent a military force into the state. Application for habeas corpus having been made, the court held that it would not review the action of the Governor, and said:

" * * * It is not the province of the courts to hinder, delay, or place obstructions in the path of duty prescribed by law for the executive, but rather to render him all the aid and assistance in their power * * * to bring about the consummation most devoutly prayed for."

It may be well said of the power conferred upon the President to remove alien enemies, as was said of the power conferred upon him to call forth the militia to suppress insurrections: •

"Whenever a statute gives a discretionary power to any person, to be exercised by him, upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts." Martin v. Mott, 12 Wheat. 19, 31, 6 L. Ed. 537.

The court is of the opinion that such is the true construction of section 4067, R. S. U. S., and that the President, or the officers through whom he acted, is the exclusive judge of whether Graber was such an alien enemy as for the safety of the United States should be restrained as provided by law.

"It is no answer that such a power may be abused, for there is no power which is not susceptible of abuse. The remedy for this, as well as for all other official misconduct, if it should occur, is to be found in the Constitution itself. In a free government, the danger must be remote, since, in addition to the high qualities, which the Executive must be presumed to possess of public virtue and honest devotion to the public interests, the frequency of elections, and the watchfulness of the representatives of the nation, carry with them all the checks which can be useful to guard against usurpation or wanton tyranny." Martin v. Mott, supra.

The principles governing the determination of this case are analogous to the principles applied when habeas corpus is sought to review decisions of the Secretary of Labor and other immigration officials, under the Immigration Act, that certain alien immigrants, at the time of entering the United States, were likely to become a public charge. It has generally been held that the decisions of the Secretary, after the administrative hearing provided for by the act, are final, and that

the courts are without power to review or modify them on application for habeas corpus. Ex parte Pugliese (D. C.) 209 Fed. 720. And the same is true of the decisions of the boards created under the Conscription Act, in passing upon claims for exemption. Indeed, the recent case of Angelus v. Sullivan, 246 Fed. 54, —— C. C. A. ——, is somewhat similar to this case. Angelus instituted a suit in the United States District Court for the Southern District of New York for the purpose of securing a review of the action taken by the local and district boards created under the Conscription Act, approved May 18, 1917 (40 Stat. 76). He alleged that he was a subject of Austria-Hungary, and an alien who had not declared his intention to become a citizen, and that as such he was not subject to conscription. He also averred that he had filed an affidavit claiming exemption on this ground, that the local board denied his claim of exemption, and that upon appeal the district board affirmed the ruling of the local board and Angelus was ordered to report for military service. The court held that the decision of the board denying Angelus' claim of exemption, on the ground that he was a subject of Austria-Hungary, was final, and could not be interfered with by the courts.

It is interesting to note, in the present circumstances, that the principles stated above are also followed by the English and Canadian courts. In the annotated note following the report of the case of Porter v. Freudenberg (English Court of Appeal) 1 K. B. 857 (1915) 5 B. R. C. 600, are cited the cases of Rex v. Vine Street Police Station (1915) 113 L. T. N. S. 971, and Re Gusetu (1915) 29 Can. Crim. Cas. 427, holding that the rule that a court will not entertain an application for habeas corpus from a prisoner of war applies to a civilian subject of an enemy state, who has been interned as a measure of public safety.

In this case the President, under the authority conferred upon him by law and in the manner prescribed by section 4067, R. S., has acted through the proper officials, and their determination that Graber is an alien enemy, who should be restrained or interned, is final and conclusive, and is not subject to review by the courts.

The application for the writ is denied.