### MINOTTO v. BRADLEY, U. S. Marshal.

#### (District Court, N. D. Illinois. May 24, 1918.)

1. WAR ⟨⚬⟩4—INTERNMENT—STATUTE—CONSTRUCTION—"NATIVE."

Petitioner, who was born in Germany and lived there for many years, *held* a "native" of Germany, and on the outbreak of war between the United States and Germany may be taken in custody by virtue of presidential warrant issued under Rev. St. § 4067 (Comp. St. 1916, § 7615), providing for the arrest, etc., of native citizens or denizens of hostile nations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Native.]

2. WAR ⟨⚬⟩4—ENEMY ALIENS—INTERNMENT—PRESIDENTIAL WARRANT.

Where the President, under Rev. St. § 4067 (Comp. St. 1916, § 7615), issues a warrant for a native, subject, citizen, or denizen of a hostile nation, the warrant need not disclose the grounds on which the President ordered such person to be taken into custody.

---

⟨⚬⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CONSTITUTIONAL LAW ⬤⟹252—PERSONS PROTECTED—ENEMY ALIENS—DUE PROCESS.

One taken in custody by virtue of presidential warrant, under Rev. St. § 4067 (Comp. St. 1916, § 7615), as a native, subject, etc., of a hostile nation, has no recourse on the ground that he was deprived of his liberty without due process of law; the arrest being in accordance with the statute, etc.

4. WAR ⬤⟹4—ENEMY ALIENS—INTERNMENT.

Notwithstanding Rev. St. § 4067 (Comp. St. 1916, § 7615), an enemy alien may be taken in custody by virtue of presidential warrant, without the filing of any complaint to some court or judge.

Petition by James Minotto for writ of habeas corpus to be directed to John J. Bradley, United States Marshal for the Northern District of Illinois. Petition denied.

The petition recites that petitioner is an Italian citizen, and is unlawfully held by the United States marshal by virtue of a warrant issued under a presidential proclamation made pursuant to sections 4067–4070 of the Revised Statutes (Comp. St. 1916, §§ 7615, 7618). Petitioner urges that the writ should issue for the following reasons: (1) That petitioner is not an alien enemy, within the intent and meaning of the law of the United States and the proclamation of the President. (2) That he never has sworn allegiance, and never has owned allegiance, to Germany or any nation or country with which the United States is at war. (3) That he has committed no crime against the public safety, and violated no law of the United States; that he has not given aid and comfort to the enemy of the United States, and has done no act in violation of any regulation promulgated by the President. (4) That there is no reasonable cause to believe that he has been aiding the enemy, or to believe that he is about to violate any regulation promulgated by the President. (5) That the warrant was issued without any showing of probable cause, supported by oath or affirmation, as required by the Fourth Amendment to the Constitution. (6) That he was not given any hearing in advance of the issuing of the warrant. (7) That pursuant to said warrant he is to be confined for an indefinite period without a hearing. (8) That he is not an alien enemy, has violated no laws of the United States, and that no truthful evidence has been presented to the President of the United States, or to the Attorney General, tending to show that the petitioner is an alien enemy, or that there is any reasonable cause to believe that he is aiding or about to aid the enemy. (9) That the confinement of the petitioner is in violation of clause 3, section 2, article 3, of the Constitution of the United States, and the Fourth, Fifth, and Sixth Amendments of the Constitution. (10) That the direction in the warrant is contrary to the law, because under section 4069 of the Revised Statutes it is necessary that a sworn complaint be filed in some court having criminal jurisdiction, or before some judge of a court of the United States, and a full information and hearing had upon such complaint. (11) That the petitioner is a subject of the kingdom of Italy.

Section 4067 of the Revised Statutes reads as follows: "Whenever there is declared a war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States, by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being males of the age of 14 years and upwards, who shall be within the United States, and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject, and in what cases and upon what security their residence shall be permitted; and to provide for the removal of those who, not

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

being permitted to reside in the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety."

Section 12 of the President's proclamation of April 6, 1917, reads as follows: "An alien enemy whom there may be reasonable cause to believe to be aiding or about to aid the enemy, or who may be at large to the danger of the public peace or safety, or who violates or attempts to violate, or of whom there is reasonable ground to believe that he is about to violate, any regulation duly promulgated by the President, or any criminal law of the United States, or of the states or territories thereof, will be subject to summary arrest by the United States marshal, or his deputy, or such other officer as the President shall designate, and to confinement in such penitentiary, prison, jail, military camp, or other place of detention as may be directed by the President."

A. H. and Henry Veeder, Francis Baldwin and Sims, Welch & Godman, all of Chicago, Ill., for petitioner.

Charles F. Clyne and Robert T. Neill, Sp. Asst. U. S. Atty., both of Chicago, Ill., for respondent.

CARPENTER, District Judge (after stating the facts as above). [1, 2] I think I do not care to hear from the attorneys for the government in this case. As I stated at the outset, the court is not neutral in this war, and any doubts which it may entertain as to the construction of the statutes and proclamations in question must be resolved in favor of the presidential warrant. Of the 11 reasons assigned here why the writ should issue we are concerned only, at least at the outset, with reasons 1 and 2. These two assignments seem to dovetail together, and if, under a construction of the act of Congress, a person comes within the definition of an alien enemy, clearly it was within the power of Congress to deal with such alien as it saw fit; and if the law has prescribed how an alien enemy should be dealt with, either by executive proclamation or through the various administrative agencies of the government, the petitioner cannot complain. The sole question, as I see it, is: Is the petitioner an alien enemy, as defined by Congress? If the petitioner is not an alien enemy, the writ in this case must issue.

It has been urged that the German law and the Italian law determine the status of the petitioner. We must construe the act of Congress according as the phrases and words used are construed in this country, according to our laws. We cannot assume that Congress, in legislating, is using words and phrases as they are used in the civil law or the Code Napoléon, as distinguished from the common law and statute law in this country. Whether, as between Italy and Germany, the petitioner was an Italian or a German, is not important here. The use by Congress of the four words "native, citizen, subject and denizen" indicates that each one of the words was to have a significant and different meaning. Counsel for petitioner admit that the words "subject" and "citizen" are broad enough to include the native German, born of German parents. It would appear, therefore, that the word "native" must have been used to define something else. As I said, by way of illustration, to Mr. Godman (attorney for the petitioner), the native-born German who moves to Switzerland and becomes naturalized is neither a subject nor a citizen of Germany. He is a native, however, of Germany, and would be so considered by any one. In-

deed, a person born in Illinois, a citizen of the United States, is none the less a native of Illinois.

Counsel argues that to be "native" one must not only be born in a country, but owe loyalty and allegiance to that country. Allegiance is not born in the child of alien parents. Allegiance may well determine one's political status. Allegiance by birth and the place of birth may be two entirely different things. The derivation of the word "native" indicates the place of birth; a man's native town is the town where he was born; a man's native state, be it Wurttemberg or Massachusetts, is the state where he was born. He may be a citizen of a confederation of states, but his nativity is determined by the place of his birth. One born of foreign parents in this country owes perhaps a double allegiance; to a foreign nation because of his parents, and to this because of his birth. When, however, he becomes of age, he can elect which country shall have his sole allegiance. He is a native at all events of the United States.

This statute must be construed, as I stated during the argument, with the end which Congress had in view. We all appreciate the seriousness of the situation. We realize that a mistake, once made, cannot be remedied. The determination by the President whether the facts justify the internment of the petitioner, provided he is an alien enemy, is not to be investigated by the courts. The courts, in the nature of things, are precluded from discussing those facts. If the President were required to disclose the basis for his warrant, the entire purpose of the statute might be frustrated. The only question to be settled here is whether, under the construction of this statute, the petitioner is a "native, citizen, denizen or subject" of a power with which we are at war. The petitioner could no more cease being a native of the place of his birth than I could cease being a native of the state of Illinois, when you are considering the place of birth.

Look at the history of this case. The petitioner was born in Germany. His mother was born in Germany. His father was born in Austria. The residence of the family was in Germany until within a very short time before the petitioner came to this country. The record shows that the family of the petitioner have no property in Italy, and have never lived there for any length of time. Under these circumstances it seems to me the court is not stretching the construction of this statute by holding that this is just the kind of a case that Congress intended to reach when it used the word "native." All the sympathies of one who was born in Germany, and who has lived there for 22 or 23 years, may be said to be with Germany. Whether they are or not in this case is not important. Suffice it to say that the language used by Congress apparently meets such a case.

It might be easy to find in this country thousands of men who were born in Germany and lived there for 25, 30, or 35 years, saturated with German institutions, all of their sympathies might lie with Germany, yet, if the argument for the petitioner is right, the President is helpless, and nothing can be done with them in this country at this time. If a friendly ally of this country is offended by the action of the President, because some one tracing his lineage back to Italy, but

born in Germany, was apprehended under the President's warrant, I have no doubt the matter will be brought to the attention of the State Department and diplomatically adjusted.

[3] Inasmuch as Congress has the right at all times to legislate for aliens, clearly it has the right to legislate for alien enemies, and there can be no question here of violating the provisions of our Constitution. The claim that the petitioner is deprived of his liberty without due process of law has no place in the argument in this case. It is like the ordinary case of deportation. Congress confers upon an administrative body certain rights; it is told to do certain things; it determines the facts; it reports that the facts have been so determined. That is all there is to it. The alien has a right to have the courts of this country say whether or not he has been dealt with according to the law, according to the statute enacted by Congress. That having been done, he cannot get any additional rights by claiming that the Constitution, which gives him certain rights in our courts to sue and be sued and to enjoy the protection of our police regulations, gives to our citizens greater rights.

[4] Section 4069, after referring to the presidential proclamation, requires the presentation of a sworn complaint to some court or some judge, and this procedure is made mandatory by this section of the Revised Statutes, which authorizes the several courts of the United States having criminal jurisdiction, after complaint and hearing, to cause alien enemies to be apprehended, confined, or removed. This section does not in any way limit the powers of the President, but furnishes an additional means to bring about the same result. If the information comes in the first instance to the President or his administrative officers, he may act. Section 4069 permits an information to be filed by any individual who believes that the law has been violated; and, as I have said before, the disclosure, by way of complaint or information, of the facts upon which the alien is apprehended, might in many instances destroy the effectiveness of the law. In this position I am supported by an able decision in a late case by the District Court in the Northern District of Alabama. Ex parte Graber, 247 Fed. 882. It is clear to me that, having given the President summary power, Congress never intended to take that away by authorizing complaints to be filed in the courts.

To summarize: As I view the situation, the sole question to be determined is whether, under section 4067 of the Revised Statutes, the petitioner comes within the description "natives, citizens, denizens or subjects" of a hostile nation. I believe that he does, and that therefore the President had a right to issue the warrant.

The application for the writ of habeas corpus must therefore be denied.