### UNITED STATES ex rel. DE CICCO v. LONGO.

#### Civil No. 768.

District Court, D. Connecticut.

July 4, 1942.

See, also, 46 F.Supp. 169.

Pasquale R. Ierardi, of Hartford, Conn., George Di Cenzo, of New Haven, Conn., and Edward Mascolo, of Waterbury, Conn., for relator.

Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., and David Schwartz, Sp. Asst. to Atty. Gen., of Washington, D. C., for the Government.

SMITH, District Judge.

Petitioner has instituted this proceeding for a writ of habeas corpus on the ground that he is a citizen of the United States by naturalization and, therefore, illegally held in custody by the immigration authorities and the Attorney General, under a presidential warrant issued pursuant to an order of the Attorney General directing his detention under Sec. 21, Title 50, U.S.C., 50 U.S.C.A. § 21, and the Presidential Proclamation of December 8, 1941, No. 2527.

The Government in its brief raises the question of the power of the Court under a writ of habeas corpus in this situation. The power to inquire into the fact of the petitioner's citizenship by writ of habeas corpus exists in this Court. The executive is necessarily given arbitrary powers over the movements and actions of enemy aliens in time of war. But the necessity for such power over alien enemies cannot be taken as an excuse to remove from American citizens the protection of the guarantee of due process of law in the Fifth Amendment of the Constitution.

█ The question of American citizenship having been raised in good faith, any person held under the Alien Enemy Act is entitled to judicial determination of his claim of citizenship. Surely, this protection is a safeguard needed even more in the stress and heat of wartime enemy alien control than in the operation of the peace time alien deportation acts.

In cases involving administrative determination of alien status in time of peace, the denial of the power of the courts to inquire into citizenship by writ of habeas corpus has never been extended beyond the peculiar circumstances of the Ju Toy case (United States v. Ju Toy, 1905, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040), a case of refusal of entry under the Chinese Exclusion Act. There the Court considered the petitioner as one outside the country, knocking at the door for admission, and not entitled to judicial determination of his right of entry. How much the Ju Toy decision may have been based on the practical difficulties of judicial administration of the Exclusion Act, we need not here speculate, for denial of the power to review the question of citizenship has not been further extended. The language applied to the Chinese deportation cases by Mr. Justice Brandeis, in refusing to extend the doctrine of the Ju Toy case, can be applied with even more force to cases of seizure of individuals within the United States by the executive under the Alien Enemy Act despite their claims to American citizenship:

"Jurisdiction in the ·executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact. * * * Against the danger of such deprivation [of liberty] without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law. The difference in security of judicial over administrative action has been adverted to by this court. Compare United States v. Woo Jan, 245 U.S. 552, 556, 38 S.Ct. 207, 62 L.Ed. 466; White v. Chin Fong, 253 U.S. 90, 93, 40 S.Ct. 449, 64 L.Ed. 797.

"It follows that Gin Sang Get and Gin Sang Mo are entitled to a judicial determination of their claims that they are citizens of the United States; * * *." Brandeis, J., in Ng Fung Ho v. White, 1922, 259 U.S. 276, 42 S.Ct. 492, 495, 66 L.Ed. 938.

The petition for habeas corpus is properly before the court in this case, since, by its claim of American citizenship it attacks an essential jurisdictional fact controlling the power of respondents to hold petitioner in custody as an enemy alien. Ng Fung Ho v. White, supra.

█ The decision of the Attorney General as to the necessity or desirability of the detention of the petitioner under the Enemy Alien Act, if jurisdiction exists under the Act, is not here reviewable. Ex parte Risse (In re Stallforth), D.C.N.Y. 1919, 257 F. 102; Ex parte Gilroy, D.C. N.Y.1919, 257 F. 110; Minotto v. Bradley, D.C.Ill.1918, 252 F. 600; Ex parte Fronklin, D.C.Miss.1918, 253 F. 984; Ex parte Graber, D.C.Ala.1918, 247 F. 882; De Lacey v. United States, 9th Cir., 1918, 249 F. 625, L.R.A.1918E, 1011.

The sole question before the Court, therefore, is the citizenship of the petitioner.

Petitioner, Pasquale De Cicco, was born in Italy in the year 1880 of Italian parents. He entered the Italian Army in the year 1900 and served until the year 1903, when he was released from the army and placed in a reserve status at the rank then held by him, Corporal· Major, a non-commissioned rank. He came to the United States subsequent to his release from military service in 1903. During the year 1903 he entered the employ of the Italian Government in the office of the Consulate General in New York. He was naturalized as a United States citizen in the Southern District of New York, 1909, and in that year was married. There are three children of the marriage, two sons and a daughter, all of whom were born in the United States, educated in the United States and are still resident in the United States. Sometime subsequent to their birth, petitioner caused the names of the children to be registered in the records in the town of the petitioner's birth in Italy. The two sons were married in the United States.

Petitioner was appointed Consular Agent of Italy at New Haven in the year 1915 while living with his family in New York City. He returned to Italy in the year 1915, in spite of the refusal of the State Department to issue an American passport for his return to Italy at that time, several months after Italy's entrance into the war

and the call to service of the military class of 1880 of which he was a member. On arriving in Italy, he voluntarily reentered the active Italian military service at his former rank.

Italian law in effect at that time provided that an Italian citizen was expatriated upon his naturalization in a foreign country but that foreign naturalization did not relieve him from his military obligations to Italy. Civil Code of the Kingdom of Italy, Part Four, Articles 11 and 12, Law of June 13, 1912, Art. 8.

Italian law in effect at that time further provided that an Italian citizen expatriated by naturalization abroad was repatriated as an Italian citizen by military service in the kingdom or by acceptance of employment from the State. Law of June 13, 1912, Art. 9.

The statute law of the United States in effect at that time provided that American citizenship should be lost by naturalization of the citizen under the laws of a foreign country or by his taking an oath of allegiance to a foreign country. Act of Mar. 2, 1907, 34 Stat. 1228, Sec. 2, 8 U.S.C.A. §§ 16, 17.

Petitioner served in the Italian Army for a period of approximately five months in active military service, at the end of which time he was sent to London, England, with an Italian military mission, serving with the same rank, that of Corporal Major. In 1917 he was sent from London to the United States with an Italian Government mission. He re-entered the United States on an Italian diplomatic passport and was reported on the certificate of entry as a citizen of Italy going to "official detail, Italian Government Service, % Italian". The certificate of admission further shows that he was held to be exempt from head tax, "diplomat". He served with the Italian commission in Washington until 1919 when he moved with his family to New Haven and assumed the office of Italian Consular Agent to which he had been appointed prior to his departure for Italy in 1915. In October, 1919, he received from the Italian Army a discharge certificate showing that he was on unlimited leave, not subject to call for training since he was more than twenty-eight years of age, but subject to call for military service in time of war. He returned to Italy in December, 1919, coming back to the United States in January, 1920. The certificate of admission shows that he was admitted as a citizen of Italy whose last permanent residence was New Haven, Connecticut. The certificate of admission shows that a head tax was paid by him or on his behalf on his entry in 1920.

He was registered as a voter in the City of New Haven, Connecticut, at some time soon after his removal there from New York, and has voted in New Haven each year since that time. He purchased land and built a house in New Haven, in which he and his family have resided for some years.

During his employment in Washington in 1918, he registered under the Selective Service Act of 1917, 50 U.S.C.A.Appendix, § 201 et seq.

He remained in the employment of the Italian Government until the Italian Consulates were closed in 1941. In answer to a questionnaire of the Italian Government in September, 1941, he informed the Italian Consulate General he was an "American citizen in 1909", that he was a member of the National Fascist Party of Italy and that he had been a member of that party since 1925.

In answer to the same questionnaire, he stated he had received two fascist citations from the Italian Government as a result of injuries received when attacked in this country by anti-fascists on two occasions.

The controlling question in this case is the effect on his American citizenship of his return to Italy, his entry in the Italian Army in 1915, and his subsequent service on Italian missions in London and Washington as an official of the Italian Government. Under the law in force at that time, the Act of 1907, an American citizen must be held to have lost his citizenship upon his naturalization under the laws of any foreign country, or on his taking an oath of allegiance to a foreign country, provided the United States was not then at war. Petitioner denies that he took any oath of allegiance in 1915. It is entirely possible that no oath was required of men who voluntarily returned to Italy to fulfill the obligations of military service under the oath taken by them at the time of their prior period of military service. Petitioner took such an oath at the time of his military service in 1900.

■■ The questions here presented are, first, whether he was naturalized under the

laws of Italy in 1915. I hold that his re-entry into Italian military service in 1915, under the Italian law then in effect, repatriated him as an Italian citizen and this repatriation is a naturalization within the meaning of the Act of 1907. His acceptance of employment by the State, with the Italian missions to London and Washington, would have had this effect if the re-entry into the army had not taken place. Second, whether he took an oath of allegiance to Italy in 1915. His voluntary submission to military service, required of him under the oath taken in 1900, must be considered as, in effect, the taking of an oath of allegiance in 1915 within the meaning of the Act of 1907. On both these grounds, therefore, he must be held to have lost his American citizenship under the terms of that Act.

Furthermore, the Act of 1907 does not, by its terms, make these two methods of expatriation from American citizenship exclusive. It does not repeal the declaration of the right of repatriation contained in R.S. § 1999, 8 U.S.C.A. § 15. The practice of the Executive Department prior to the Act of 1907 is, therefore, of interest. See Moore's Digest of International Law, Vol. 3, Sec. 469, 470, and cases of administrative interpretation cited therein, particularly the letters of Thomas to Brodhead, July 23, 1856; Seward to Foster, August 3, 1899; and Davis to Weile, April 18, 1879.

■ It is true, as petitioner contends, that the mere fact of enlistment in a foreign military force, if no oath of allegiance is taken, is not now considered a renunciation of American citizenship, and it appears that during most of our history that interpretation has been followed. See Opinions of the Attorney General, Sept. 5, 1939, Vol. 39, O.P.A.G. p. 337; and letters, Bayard to Whitehouse, Nov. 14, 1888; Rives to Putnam, Jan. 5, 1888; and Foster to Hawley, Nov. 1, 1892; and Moore's Digest of International Law, Vol. 3, Sec. 469.

In this case, however, we have something more than voluntary enlistment in a foreign military force. There is a course of conduct indicating a recognition by the petitioner of a duty owed by him to a foreign government which is inconsistent with the maintenance of American nationality. It appears that petitioner at times desired to avail himself of some at least of the rights of American citizenship, and that he intended to maintain residence for himself and his family in the United States. Yet, he attempted to do this while at the same time availing himself of the protection of the Italian Government while traveling. He attempted to do this while admitting by his actions the right of the Italian Government to, and the corresponding duty in him of Italian military service when that government was at war.

■ While domicile, and the intent necessary to establish domicile, are in many cases determinant of questions of expatriation, they do not govern where statutory conditions of expatriation exist, such as repatriation by performance of military service or the taking of an oath of allegiance. Nor do they govern where it appears that aside from them there exists a course of conduct which involves a renunciation of American nationality.

■ This is not to say that no conceivable rights or duties under foreign law may exist without the abandonment of American nationality. But the recognition of the duty of military service to the country of origin is inconsistent with the duty of a naturalized American citizen to this country, and the return to, and reentry as a reservist into the military service of the country of origin, an effective act of renunciation of and expatriation from American citizenship.

Petitioner must be held to have submitted himself to Italian military law upon his return to Italy in 1915, and also to have submitted himself to the provisions of the Italian civil code concerning naturalization and repatriation. Whether his repatriation be considered technically within the meaning of "naturalization" as used in the Act of 1907, as this Court holds herein, in any event his course of action must be considered inconsistent with his obligations of American citizenship and, therefore, a renunciation in 1915 of his American nationality.