## UNITED STATES ex rel. ZDUNIC v. UHL, District Director of Immigration and Naturalization.

District Court, S. D. New York.
July 7, 1942.

Bennet, House & Couts, of New York City (William S. Bennet, of New York City, of counsel), for relator.

Mathias F. Correa, U. S. Atty., of New York City (Samuel Brodsky and Stuart Z. Krinsly, Asst. U. S. Attys., both of New York City, of counsel), for respondent.

BRIGHT, District Judge.

The relator, taken into custody on December 17, 1941, as a German enemy alien, pursuant to section 21 of Title 50 U.S.C.A. and the President's proclamation issued thereunder, petitions for a writ of habeas corpus to determine the legality of his restraint.

Section 21 provides, so far as material, that "Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; * * * and to establish any other regulations which are found necessary in the premises and for the public safety."

On December 7, 1941, Japan, an ally of Germany, attacked this nation at Pearl Harbor and the President made due proclamation under the section quoted against that country, in which certain regulations were promulgated. No. 2525. On December 8, 1941, a similar proclamation was made against Germany. No. 2526. That proclamation, after reciting the section and that an invasion or predatory incursion is threatened upon the territory of this country by Germany, prescribed the conduct to be observed by alien enemies, that they should be liable to restraint, and charged the Attorney General with the duty of executing all regulations prescribed regarding the conduct of alien enemies within the continental United States and elsewhere. He was specifically directed to cause the apprehension of such alien enemies as in his judgment were subject to apprehension. The regulations contained in the proclamation against Japan were incorporated in and made applicable to German alien enemies. Those regulations, so far as now pertinent, were that alien enemies deemed dangerous to the public peace or safety of the United States by the Attorney General, are subject to summary apprehension, and when arrested shall be confined in such place as he may direct "until he shall have received such permit as the Attorney General shall prescribe."

No question is made upon this application as to the validity of the statute, proclamation or the regulations promulgated by the same. It is not disputed that the reason for action under the statute existed, or that the proclamation was duly made. It is conceded that relator was upwards of fourteen years of age, was not naturalized and was within the United States.

The respondent's return alleges that relator is being held in custody as an alien enemy pursuant to orders of the Attorney General, which orders were issued after a hearing before an Alien Enemy Hearing Board, and after consideration of the evidence by the Attorney General. That allegation is not traversed by the relator, except that he is a native, citizen, denizen or subject of Germany.

■■ The power to direct the course to be observed under the circumstances was vested in the President and is not subject to review by this court. Similarly, the order of the Attorney General, after the hearing mentioned, and his determination that relator should be held in custody is likewise not subject to review. The statute was clearly enacted to safeguard the country. It must be conclusively presumed that the President and the Attorney General have acted lawfully and that relator, if a native, citizen, denizen or subject of Germany, is properly in custody. Relator, if in one or more of the four classes mentioned, cannot litigate here whether he has done or intends to do anything which might or could endanger the country's safety, or has done anything which violates the President's proclamation, or as to the manner or degree of his restraint. This court, in times like these, will resolve any doubts it may have (and I do not have any) in favor of the President's and Attorney General's actions. Ex parte Graber, D.C., 247 F. 882; Minotto v. Bradley, D.C., 252 F. 600; Ex parte Fronklin, D.C., 253 F. 984; Ex parte Risse, D.C., 257 F. 102; Ex parte Gilroy, D.C., 257 F. 110.

■ The sole question here is whether relator, at the time of the.President's proclamation, was a native, citizen, denizen or subject of Germany. Upon this question relator is entitled to a hearing of testimony and arguments only if there is a substantial issue of fact arising upon the petition, return and traverse. Walker v. Johnston, 312 U.S. 275–284, 61 S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. ——.

The essential facts, it seems to me, are undisputed. Relator was born in Bosnia, then a part of Austria-Hungary, and he served in the Austro-Hungarian Army from February 20, 1918, to December 7, 1918. The peace treaties after the war of 1914–1918 gave Bosnia to Jugo-Slavia and it may be assumed relator became a citizen and subject of that nation. He was inducted into that country's army on February 20, 1921, but because of ill treatment deserted on December 11, 1921. For this he was refused a passport by the Jugoslav Consulate in 1936. He worked and lived in Austria from March 31, 1922, to June, 1939. On March 13, 1938, Germany invaded Austria, the so-called "Anschluss" was consummated, and Austria became and since has been a state of the German Reich, under a German decree that the laws then prevailing in Austria remain in force until further notice. Relator continued to live and work in the new German state until he came to this country in June, 1939. He became a member of "Die Deutsche Arbeitsfront" (the German Labor Front) on June 1, 1938. It is shown that by German law the Labor Front is an integral part of the German National Socialist Party, and that the Labor Front is an organization of all physically and mentally productive Germans; and that only German citizens may join it.

I cannot conclude, however, that membership in the Labor Front is limited entirely to German citizens, for the reason that in every instance shown in documents issued by Germany to relator, and produced upon this hearing, in which there was need to mention of what country he was a citizen, the relator was described as "Staatenlos" (Stateless). This incident, except as it proves that the relator worked and lived in Germany after the Anschluss and until he came here, and enjoyed and was permitted to exercise certain rights in Germany, is not otherwise considered. as determinative of, or important to, the question involved.

It is also shown that there was issued to relator on May 13, 1939 a "Deutsches Reich Arbettsbuch" (German Work Book) in which his residence is shown as Innsbruck, Tyrol, where he had been employed for some time before, at least since February 17, 1932.

On June 9, 1939, he obtained a visa from the American Consulate at Vienna, Germany, permitting him to come to this country for the purpose of instructing Ameri-

can workers in the milling and preparation of metal powders used in cemented carbides and other metallurgical products. He entered this country on June 23, 1939, and then gave his foreign residence as Innsbruck, the capitol of Austrian Tyrol. His permit to enter was for a temporary period of twelve months. He applied for an extension of this permit on May 23, 1940, and in that application, filled in by himself, he stated that he owed allegiance to Germany, that his foreign residence was Innsbruck, Tyrol, Germany, that his passport had been issued by Germany, and that he had a return ticket to Hamburg, Germany. Relator says that his statement that he owed allegiance to Germany was an error, made because of his inadequate knowledge of English, and that he did not repeat the statement in his subsequent application for a further extension, but in that left the answer blank.

He was granted an extension of six months and has received no further extension. At the time of his arrest he was obviously illegally in this country.

■ It is alleged by the respondent, and denied, that relator is a denizen and subject of Germany. The denial, it is conceded, is of a conclusion of law, the very question to be decided. It is not claimed by the government that relator is a native or citizen of Germany. I think that the undisputed facts show clearly that relator was a denizen of Germany.

The statute in question was originally passed in 1798, and then applied only to males. It was amended in 1918 and made applicable to both sexes. Dr. Johnson, in his dictionary published in 1755, defined "denizen" as a free man, one enfranchised, and illustrated his meaning by quoting from poems by Dryden and Pope in which the word was used in the sense of inhabitants or dwellers. In the debates in the Congress in 1798, which enacted the statute in question, denizen was used in the sense of an alien who was permitted to acquire, hold and inherit real estate, and to live and earn his living in the country. It is shown here that relator would have the same rights under the Austrian laws, continued in effect by the German statute. The Encyclopedia Britannica, 14th edition, states that a denizen is a dweller; a stranger admitted to certain rights in a foreign country. The shorter Oxford English Dictionary defines denizen as one who dwells within a country; one who lives habitually in a country but is not a native born citizen. Webster's definition is, a stranger admitted to residence in a foreign country; specially in English law an alien who is made a subject by the King's letters patent holding a middle state between an alien and a natural born subject; a dweller. The derivation of the word is given as from the old French word "denzem", meaning one living within a city, and from latin de intus—from within. Funk & Wagnall's New Standard Dictionary defines the word as one who lives or has habitat in a place; a citizen; inhabitant dweller.

The relator here is clearly brought within the classification of "denizen" by the undisputed facts. He lived and worked in Austria from 1922 to 1938, and became a denizen of that country. He continued to live and work there from March 13, 1938, when Austria became a German state, until he left for this country in about the middle of June, 1939. He was given a German work book, became a member of the German Labor Front, received a German passport, and intends to return there. I find that at the time of the President's proclamation he was a denizen of Germany. His application for a writ is, therefore, denied upon the merits.