**UNITED STATES ex rel. ZDUNIC v. UHL, District Director of Immigration, etc., et al.**

**No. 217.**

Circuit Court of Appeals, Second Circuit.

Aug. 18, 1943.

Bennet, House & Couts, of New York City (William S. Bennet, Victor House, and Bernard A. Finkel, all of New York City, of counsel), for appellant.

Mathias F. Correa, U. S. Atty., and Samuel Brodsky and Stuart Z. Krinsly, Asst. U. S. Attys., all of New York City, and Edward J. Ennis, Director, Alien Enemy Control Unit, Department of Justice, and Leo Gitlin, Atty., Department of Justice, both of Washington, D. C., for appellees.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The relator is an alien who was arrested by agents of the Department of Justice acting under a proclamation of December 8, 1941, No. 2526, 6 Fed.Reg. 6323, made by the President pursuant to the Act of July 6, 1798, as amended, 50 U.S.C.A. § 21. After a hearing before an Alien Enemy Hearing Board and consideration of the evidence by the Attorney General, the latter ordered the relator to be held in custody by the respondent as an alien enemy. On June 2, 1942 the alien filed his petition for a writ of habeas corpus which was forthwith issued. The petition alleged that he was born in the year 1900 in Vares in the Province of Bosnia, which was then a part of the monarchy of Austro-Hungary but later became a part of the Kingdom of Yugoslavia; that there-

upon he become a citizen of Yugoslavia and has so remained. In 1922 he went to Austria and continued to live and work there until June 1939 when he was admitted to the United States as a non-quota immigrant. He carried a "Fremdenpass" issued by Germany in 1938 which describes him as "stateless" and gives his birthplace as Vares. This passport bore an American visa issued to him as a "temporary visitor" under § 3(2) of the Immigration Act of 1924, 8 U.S.C.A. § 203(2). The petition denies that he is or ever has been a native, citizen, denizen, or subject of Germany and asserts that his detention is therefore unlawful.

The respondent's return to the writ declares the cause of the alien's detention as already stated, admits his birthplace and his residence in Austria and asserts that Austria has been a part of Germany since early in 1938 and that he is "a denizen and subject of Germany." It alleges also that he stated under oath, when applying for an extension of his temporary stay in the United States, that he owed allegiance to Germany. The petitioner's traverse to the return explains that he did not understand the meaning of "allegiance" when he made the said statement. It reasserts that he is a Yugoslav citizen, gives certain additional facts regarding his obtaining the German passport and denies the allegations of the return which allege that Austria has become part of Germany and that he is a denizen and subject of that country. There is also in the record a so-called "Amendment to Return of Writ" signed by an Assistant United States Attorney which purports to make part of the return affidavits by foreign law experts, a copy of the German law of March 13, 1938, and certain papers [1] taken from the relator while in custody. These were in the German language and English translations of them were not presented to the district court but have been added to the record on appeal. The petitioner's traverse does not allude to the amendment to the return,[2] nor is the amendment mentioned in the recital of the pleadings in the order dismissing the writ, but the opinion refers to the relator's membership in the German Labor Front and states that under German law it is an integral part of the German National Socialist Party. See United States ex rel. Zdunic v. Uhl, D.C., 46 F.Supp. 688, 690.

■ The appeal from the second order, which denied the relator's motion for reargument must be dismissed. Such orders are discretionary and not appealable. The rule that final orders only are reviewable applies to habeas corpus proceedings. Collins v. Miller, 252 U.S. 364, 365, 40 S.Ct. 347, 64 L.Ed. 616.

The appeal from the order which dismissed the writ and remanded the relator to custody presents two questions: (1) whether the pleadings raised any material issue of fact upon which testimony should have been taken, as requested by the relator, and (2) whether he falls within the class of aliens whose restraint is authorized under the statute and presidential proclamation pursuant to which he is held in custody.

■ In several recent cases the Supreme Court has discussed the procedure to be followed on applications for writs of habeas corpus. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Holiday v. Johnston, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L.Ed. 1392; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302. These authorities make it clear, as the district court recognized, that if the pleadings present any material issues of fact, the petitioner is entitled to have those issues determined in the manner prescribed by section 461 of 28 U.S.C. A., that is, "by hearing the testimony and arguments."[*] But the judge was of the opinion that the petition, return and traverse raise no substantial issue of fact. With this conclusion we cannot agree. The ultimate issue for determination is whether the relator is a "native, citizen, denizen, or subject" of Germany. The meaning of those words as used in the statute, 50 U.S.C.A. § 21, presents a question of law. But whether the relator falls within one of the classes of persons to whom the statute, properly construed, is applicable involves questions of fact, including a determination of what rights and privileges German law accords him in view of his place of birth, his long resi-

---

[1] His original Deutscher Reich Arbeitsbuch (German Work Book) and his original membership card in the Deutscher Arbeitsfront (German Labor Front).

[2] The traverse and the amendment were verified the same day and were apparently handed up to the court at the argument.

dence in Austria, his membership in the German Labor Front, his possession of a German Work Book, and any other relevant matters. Foreign law itself is a fact to be proved. Ennis v. Smith, 14 How. 400, 426, 14 L.Ed. 472; Guaranty Trust Co. v. Hannay, 2 Cir., 210 F. 810. The respondent made proof of certain features of German law by affidavits attached to the "Amendment to Return to Writ." The relator apparently had no opportunity to traverse the amendment before the hearing, and he does not concede that under German law he possesses the rights and privileges which respondent's expert witnesses assert. On these and any other disputed facts he is entitled to a judicial inquiry before the court can determine whether his relation to the German "nation or government" brings him within the statutory definition of alien enemies.

■■■ The decision of the district court went solely on the ground that the relator was a "denizen" of Germany. Only one earlier case has been called to our attention where that term of the Alien Enemy Act was considered. In Ex parte Gilroy, D.C., 257 F. 110, 128, Judge Mayer said that the person on whose behalf the writ was brought was not "a denizen of Germany, if such there can be." Considering the date when the statute was enacted, Judge Mayer's doubt seems well founded. A strong argument has been made by the appellant for the view that Congress in 1798 must have used the word in the sense defined by Blackstone, a master whom many Eighteenth Century American lawyers took as final authority.[3] As used in the statute the term must refer to some relation to the enemy nation which is not lost by the alien's presence within the United States. Merely former residence by him in the enemy country cannot suffice; nor can former domicil. The context seems to forbid extending the meaning to embrace a connection with the enemy state which does not include some form of allegiance.[4] No use of the term has been shown except the English use, but we are asked to hold that there is some intermediate though completely undefined relation which will serve. We are not impressed by the argument that the statute ought not to be construed in an English sense because it was passed at a time when trouble with France was imminent. It was meant for general application and was so worded as to include all those ways known to our forefathers by which one could become what we now call the national of another state. We are not disposed to attempt a definition of "denizens" which goes beyond that of Blackstone. Certainly we shall not undertake it at the present time. The rights and privileges of the relator under German law, now in dispute, should be settled before we attempt to decide whether he comes within any of the classes of persons defined as alien enemies by the statute under consideration.

Judgment reversed and cause remanded for hearing.

---

[3] 1 Blackstone, 373: "A denizen is an alien born, but who has obtained ex donatione regis letters-patent to make him an English subject: a high and incommunicable branch of the royal prerogative. A denizen is in a kind of middle state, between an alien and natural-born subject, and partakes of both of them. He may take lands by purchase or devise, which an alien may not; but cannot take by inheritance: * * * ."

[4] It is interesting to note that in 1799 South Carolina passed "An Act granting the rights and privileges of denizenship to alien friends," Act No. 1720, 5 Stat. 355. It provided that aliens becoming residents of the state and subscribing to the oath of allegiance should be deemed denizens, so as to enable them to purchase and hold realty and entitle them to like protection from the laws as citizens have, but they could not vote or hold office. See McClenaghan v. McClenaghan, 1 Strob.Eq. 295, 319, 47 Am. Dec. 532.