CITIZENS PROTECTIVE LEAGUE et al.,
v. BYRNES, Secretary of State.

No. 30992.

District Court of the United States for the
District of Columbia.

Feb. 4, 1946.

James J. Laughlin, of Washington, D. C.,
for plaintiffs.

Edward M. Curran, U. S. Atty., and Daniel B. Maher, Asst. U. S. Atty., both of Washington, D. C., for defendant.

McGUIRE, Associate Justice.

This is a complaint for mandatory injunction, restraining the Secretary of State, his officers or agents (the case having been discontinued as to the Attorney General) from seeking to deport the personal plaintiffs under the provisions of an Executive Order issued by the President and dated September 8, 1945.[1]

There is no merit in the contentions raised by the petitioners. It is admitted by all of the personal plaintiffs that they are German nationals and it is a fact that they were brought to the United States from various countries in Central and South America pursuant to agreements made in defense of the hemisphere by signatories of both the United States and these countries representing all the countries involved in their sovereign capacities.[2]

[1] Proclamation of the President No. 2662 dated September 8, 1945, entitled "Removal of Alien Enemies" (10 F.R. 11635).

[2] (a) Resolution XVII of the Conference of Foreign Ministers at Rio de Janeiro adopted January 28, 1942
(b) Resolution XX of the Emergency

■ The statute is plain and explicit[3] and its purpose was to include all aliens, who, because of their nativity or feeling of allegiance, might be led to acts dangerous to the public safety of the United States if permitted to remain at large. United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 1943, 137 F.2d 898. It springs from and has its ambit in the so-called war power, incident to and an essential prerogative of sovereignty.

"In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term;

prices of food and other necessities of life fixed or regulated; railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war." United States v. Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 574, 75 L.Ed. 1302. ^

The individual petitioners are "* * * alien enemies * * * within the United States * * * liable to be apprehended * * * and removed as alien enemies * * *." The facts as to how they came here are neither important nor controlling —the important and conclusive factor is their presence in and their status as "* * natives, citizens, denizens, or subjects of the hostile nation or government * * * within the United States * * *."

■ A state of war still exists between the United States and the former so-called Axis countries,[4] and it cannot be argued with any degree of cogency that their unconditional surrender can be said to have changed the presently existing official status of this government in relation to them. We are still officially at war and the period of war has been held to extend to the ratification of the Treaty of Peace or the Proclamation of Peace. Hijo v. United States, 194 U.S. 315, 323, 24 S.Ct. 727, 48 L.Ed.

---

Advisory Committee for Political Defense adopted at Montevideo on May 21, 1943

(c) Resolution VII of the Inter-American Conference on Problems of War and Peace adopted at Mexico City on March 8, 1945

(d) Proclamation of the President of the United States with reference to the implementation of these agreements by him under the provisions of Title 50 U.S.C.A. § 21.

3 50 U.S.C.A. § 21 reads: "Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such

event, by his Proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject and in what cases, and upon what security their residence shall be permitted, and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety."

4 (a) December 11, 1941 Joint Resolution of Congress declared the existence of a state of war between the United States and the government of Germany —passed by Congress and approved by the President. 55 Stat. 796, 50 U.S.C.A. Appendix note preceding § 1.

(b) Other declarations related to Japan and Italy, Bulgaria, Hungary and Rumania, approved December 8, 1941, June 5, 1942, 55 Stat. 795, 797 and 56 Stat. 307, 50 U.S.C.A.Appendix note preceding § 1.

994; United States v. Anderson, 9 Wall. 56, 70, 19 L.Ed. 615. The fact that statutes with reference to war activities contain provisions fixing the official ending of the war as to when they shall cease to be operative, is further conclusive of this fact.[5]

Apart from these considerations, the present condition of the enemy powers, by virtue of the fact that there is no government existing in any of them at the present time with which a Treaty of Peace could possibly be negotiated, leads indubitably to the same conclusion. Indeed if there should be no formal ending of hostilities, then most certainly the leaving of the actual time of conclusion of such to the vagaries of individual situations could only lead to the utmost confusion—a formal termination is a necessity.

■ Further, it has been held that "detention" under the Alien Enemy Act is not "detention" in the same sense that that term is used in a criminal proceeding and that, as a consequence, there is no power in the Court to admit to bail individuals who fall within its restrictive provisions. United States ex rel. De Cicco v. Longo, D.C. 1942, 46 F.Supp. 170.

■ In addition, there is no indication— at least at the present juncture—that it is the intention of the government to deport to Germany the individuals in question. Indeed it is specifically indicated by affidavit in support of the Motion to Dismiss that hearings are to be scheduled "* * * in any case in which a preliminary determination that the alien enemy shall be removed from the United States has been reached." Nor does it appear that any Order of Removal has been issued with respect to any of the plaintiffs. Not assuming at all that the plaintiffs have any right in the premises, it does appear that if they had such right and that the complaint would lie, the same has been prematurely brought—and apart from that they have failed to exhaust their administrative remedies. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 47, 50, 51, 58 S. Ct. 459, 82 L.Ed. 638.

The complaint is dismissed. Counsel will prepare proper order.

---

[5] Among these were:

(a) Soldiers' & Sailors' Civil Relief Act, 50 U.S.C.A.Appendix § 584;

(b) War Labor Disputes Act, 50 U.S. C.A.Appendix § 1510;

(c) War Contracts Renegotiation Act, 50 U.S.C.A.Appendix § 1191;

(d) Trading with Enemy Act, 50 U.S. C.A.Appendix §§ 1–31.