**UNITED STATES ex rel. SCHLUETER v. WATKINS, District Director of Immigration and Naturalization.**

District Court, S. D. New York.

May 29, 1946.

See also 67 F.Supp. 556.

George C. Dix and David S. Kumble, both of New York City, for relator.

John F. X. McGohey, U. S. Atty., of New York City (Stanley H. Lowell, Asst. U. S. Atty., of New York City, of counsel), for respondent.

BRIGHT, District Judge.

Relator has served a notice to take the depositions by oral examination of Tom Cooley, II, Chief, and John Burling, an Assistant Chief, of the Alien Enemy Control Unit of the Department of Justice; W. F. Kelley, Assistant Commissioner of Alien Enemy Control of the Immigration & Naturalization Services; the respondent; and Louis Steinberg, District Counsel of the New York office of the Immigration & Naturalization Service, respecting the arrest, detention and interment of relator, the hearings held before the Alien Enemy Hearing Boards, the proceedings and rules adopted by such Board, the evidence adduced before said Board, the standards by which decisions were made by the said Board in connection with relator's case, and the issuance of the removal order served upon relator on May 7, 1946. The notice also directs the production at such examination of the records and files of the office of the Attorney General, Alien Enemy Control Unit, and of the office of the United States Attorney and the office of the Bureau of Immigration & Naturalization, relating to relator's arrest, detention, interment and order of removal.

Respondent moves to vacate the notice (a) because none of those sought to be examined are competent to testify as to the basis of the determination by the Attorney General; (b) the order of removal is not subject to judicial review, and the basis of that order may not be inquired into by this court; (c) Cooley, Burling and Kelley are not parties to the proceeding and are not within the jurisdiction of the court; (d) respondent and his counsel have no knowledge with respect to the noticed scope of the examination, and (e) the files and records of the Department of Justice are confidential.

It is not disputed that the order of removal was made and signed by the Attorney General of the United States.

Counsel for relator contends that relator did not have a fair hearing, was denied counsel, that the order of removal was made without due process of law and affects illegally relator's constitutional rights, and that to prove these facts, it is necessary to show what transpired at the hearing.

It does appear that a hearing upon the writ of habeas corpus, already issued in this matter, is to be had before Judge Rifkind on June 3, 1946, and it will be for him to determine as to the legality of the removal order. The only question which is before this court at this time is whether or not the examination should be permitted, and whether the records mentioned should be produced.

Counsel for relator, upon the argument, stated that a stenographic record was made of the proceedings at which relator attended before the Enemy Alien Control Unit, and that such record will serve the purpose of showing what actually did transpire. Under the circumstances, therefore, I cannot see why there should be any examination of the members of that Hearing Board, or of the other persons named, to prove orally what the record should show. Certainly, there could be no examination of them as to their mental processes in making the determination and the standards by which such decision was made. The proceedings and rules adopted by said Board are likewise irrelevant under the circumstances, if what actually transpired is shown by the record and is material in the determination of the issue to be tried.

The sole question, as I see it, is whether the record of the proceedings which resulted in the removal order, is so confidential as to prohibit this court from ordering its production at the trial. Counsel for the relator stated in open court that he did not care to see it, but did desire that it be submitted to the trial judge.

Section 21 of Title 50 U.S.C.A. provides that: "Whenever there is a declared war between the United States and any foreign nation or government * * * and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government * * * who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such event, by his proclamation there-

of, or other public act, to direct the conduct to be observed * * *; and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety."

In conformity with that statute, on July 14, 1945, President Truman, Proclamation 2655, Federal Register July 20, 1945, Vol. 10, No. 144, page 8947, proclaimed as regulations, that all alien enemies within or thereafter interned within the continental limits of the United States, "who shall be deemed by the Attorney General to be dangerous to the public peace and safety of the United States because they have adhered to the aforesaid enemy government or to the principles of government thereof, shall be subject upon the order of the Attorney General to removal from the United States and may be required to depart therefrom in accordance with such regulations as he may prescribe."

By Section 23, of Title 50, the several courts of the United States, having criminal jurisdiction, after such proclamation has been made, are authorized and have the duty, upon complaint against any alien enemy "resident and at large within such jurisdiction or district, to the danger of the public peace or safety, and contrary to the tenor or intent of such proclamation, or other regulations which the President may have established," to cause such alien to be apprehended, and after hearing, and sufficient cause appearing, to order such alien to be removed out of the territory of the United States.

■ Relator contends that the United States Courts are the only ones authorized to direct removal of the relator. But that section 23 is an alternative to the power given to the President under section 21, seems most obvious by section 24, which provides that, "When an alien enemy is required by the President, *or* by order of any court," to depart and to be removed the marshal is under the duty of apprehending and providing for the execution of the order. To empower him so to do, he shall have the warrant of the President or of the court, as the case may be. Lockington v. Smith, 15 Fed.Cas., pages 758-761, No. 8,448; Ex parte Graber, D.C., 247 F. 882-884; Minotto v. Bradley, D.C., 252 F. 600-604.

■ Whether inquiry can properly be made as to the order of the Attorney General, or what the power of the court in that respect may be, is not for me to decide. I leave that to the trial court. To enable him to act, I think he should have all the facts. Accordingly, I think the record of whatever hearing relator may have had should be produced to the trial judge for his examination. To this extent only the motion is denied. In other respects it is granted.